ERNESTINE RIOUX

*vs.*

EMPLOYERS LIABILITY ASSURANCE CORPORATION, LTD.

AND

HARRIS M. ISAACSON, ADMINISTRATOR OF THE

ESTATE OF FRANK E. LANGLEY.

Androscoggin.　　Opinion, November 4, 1936.

*Benjamin L. Berman,*
*David V. Berman,* for plaintiff.
*William B. Mahoney,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

BARNES, J.   A bill in equity to reach and apply the obligations of insurer in satisfaction of a judgment debt of an insured in favor of plaintiff, brought under authority of Secs. 177 to 180 of Chap. 60, R. S. 1930.

Defendant is a foreign corporation authorized to do insurance business in this state: plaintiff, on the 19th day of August, 1933, while riding as an invited guest in an automobile owned and operated by one William Rioux, in Cumberland County, this State, was injured, in collision with a Ford car, then operated by Frank E. Langley, since deceased, but then a salesman, in the employ of Cook-Ripley, Inc., a corporation selling automobiles and then insured by the defendant corporation, under a policy dated March 22, 1933, having as part thereof two endorsements, dated May 27, 1933.

In due time, after the collision, plaintiff brought her action at law against the estate of Frank E. Langley, deceased, recovered judgment for her damages, and prosecuted her right under the statute cited above.

The cause was heard on bill, answers, replications and proof, defendant corporation denying that at the time of the collision it was an insurer of Mr. Langley.

The bill was dismissed, with costs, and plaintiff appealed. She also prosecuted a bill of exceptions.

The argument, on appeal, presents a single question: Whether or not Mr. Langley and the automobile driven by him into collision with the Rioux car were, at the time of collision, included in the coverage of the policy issued to Cook-Ripley, Inc.

The coverage provisions in the insurance policy, so far as applicable here are incorporated in the endorsements dated the 27th of May, 1933, attached to the policy, and forming a part thereof, which provide as follows:

"IT IS HEREBY UNDERSTOOD AND AGREED that the policy to which this endorsement is attached is extended to cover the legal liability, as defined therein, of the owners, partners, officers and employees of the Named Assured whose salary is included in the payroll upon which the premium for this policy is based, for the operation of any automobile owned by or in charge of the Named Assured, other than an automobile owned by such individuals or by a member of their family, for the purposes described in the policy and for private and pleasure purposes.

IT IS FURTHER UNDERSTOOD AND AGREED as respects automobiles owned by the Named Assured that the Company extends the insurance provided by this policy so as to be available, in the same manner and under the same conditions as it is available to the Named Assured, to any person or persons while riding in or legally operating any of the automobiles owned by the Named Assured, and to any person, firm or corporation legally responsible for the operation thereof, provided such use or operation is with the permission of the Named Assured. In no event shall the extension of insurance provided herein be construed to cover a purchaser of any automobile, whether or not such automobile is being purchased on the installment plan."

The Justice hearing the bill found: "In March or April, 1933, Cook-Ripley, Inc., dealers in automobiles, employed said Frank E. Langley, since deceased, as one of its automobile salesmen, on a commission basis, his name was carried on its payroll, and he continued in its employ up to and at the time of said accident on

August 19, 1933. Whether or not, at the time of the accident, he was engaged in the performance of the duties of his employment, does not appear.

"During the time of his employment, said Cook-Ripley, Inc., had a 'salesmen plan,' so-called, by which, through the Universal Credit Company, a finance company, a salesman who wished to own his own demonstrator, could purchase an automobile of said Cook-Ripley, Inc., on the installment plan, under a conditional sale contract, and drive it on its dealer's license plates.

"But, under this plan, if a salesman desired to sell the automobile so purchased by him, it became necessary for him to obtain the consent of Cook-Ripley, Inc., if he wished to continue longer in its employ; and, in that case, he was required to pay over to it the profits of such sale if he desired to obtain from it another demonstrator under that plan. But no such restrictions or conditions were incorporated in the conditional sale contract.

"About one-half of the salesmen of Cook-Ripley, Inc., were paying for their own demonstrators under this plan.

"The reason why Cook-Ripley, Inc., desired to control the sale of demonstrators by its salesmen while in its employ, to the extent aforesaid, was so that the salesmen could not sell their demonstrators to their own advantage and with no profit to Cook-Ripley, Inc.

"At first Langley was on a straight commission, and used the automobile of Cook-Ripley, Inc.; but, on August 11, 1933, he took advantage of the 'salesmen plan' and purchased of it, on the installment plan, by conditional sale contract, with a provision to the effect that title was not to pass to the purchaser until the amount is fully paid in cash, the certain Ford automobile which was afterwards involved in said collision, and which he was driving at the time of the accident. Said automobile was delivered to him on said August 11, 1933.

"By the terms of his conditional sale contract, said Langley was required to pay two hundred and two dollars and sixty-cents, on or before delivery, and in addition thereto, a deferred balance of four hundred and ninety-five dollars, payable at the offices of the Universal Credit Company, in three payments of twenty-five dollars each, and one payment of four hundred and twenty dollars. That two hundred and two dollars and sixty-two cents, at least the whole

of that sum—was never actually paid by him, although the Ford automobile was delivered to him; but the Universal Credit Company requested that it be put through in that way. The automobile was really sold to him at wholesale, and the reduction in price at which it was sold to him was figured there.

"Upon said Langley purchasing said automobile on the installment plan, and signing the conditional sale contract, said Cook-Ripley, Inc., sold, assigned and transferred to said Universal Credit Company, the finance company, the right, title and interest of said Cook-Ripley, Inc., in and to said contract, and the property thereby covered, and authorized said Universal Credit Company to do every act and thing necessary to collect and discharge the same, for which said Cook-Ripley, Inc., received pay from said Universal Credit Company on August 14, 1933. Said Langley had possession of, and operated, said automobile, from the time it was delivered to him, on August 11, 1933, up to and at the time of the accident on August 19, 1933, on the dealer's license plates of Cook-Ripley, Inc., made no report to the secretary of state of a sale to said Langley; and, as a matter of fact, made no report of sales of any other automobiles to the secretary of state.

"In said assignment of said conditional sale contract to the Universal Credit Company by said Cook-Ripley, Inc., as aforesaid, among other things, it is stipulated, in 'consideration of your purchase of the within contract, the undersigned' (Cook-Ripley, Inc.) 'guarantees payment of the full amount remaining unpaid hereon, and covenants if default be made in payment of any installment herein to pay the full amount then unpaid to Universal Credit Company upon demand, except as otherwise provided by the terms of the present Universal Credit Company Retail Plan.'

"At the time said Langley obtained this automobile, as aforesaid, there was insurance against collision to protect the finance company and Cook-Ripley, Inc.; and after the accident the latter caused the wreck of the automobile to be sold, and credited the proceeds to Langley's account.

"On October 11, 1933, said Cook-Ripley, Inc. sent its check to the Universal Credit Company to clear off the unpaid balance, and said conditional sale contract was thereafterwards returned to said Cook-Ripley, Inc.

"It is admitted that the defendant, Employers Liability Assurance Corporation, Ltd., before the recovery of said judgment in said actions at law against the estate of said Frank E. Langley, deceased, had notice of said accident, injury and damages. It did not defend any of said actions at law, however, and took no part in the defense of any of them."

· The Justice further found: "That said Langley was obligated to make each and all of the deferred payments for said Ford automobile required of him in, and in accordance with, the terms of his conditional sale contract; and that there was no agreement or understanding, express or implied, excusing him from making each and all of said deferred payments according to the terms of his said contract.

"That at the time of said accident on August 19, 1933, the said Ford automobile was not 'owned by or in charge of the Named Assured,' Cook-Ripley, Inc.

"That at the time of said accident, said Langley was not 'riding in or legally operating' an automobile 'owned by the Named Assured,' Cook-Ripley, Inc., with its permission.

"That in said conditional sale contract (Plaintiff's Exhibit No. 4), and also in Defendant's Exhibit No. A, which is the conditional sale contract and the Dealer's Representations, Assignment and Guaranty, the conditional vendee is designated as 'purchaser'; and said conditional sale contract recites, among other things, that 'the undersigned Purchaser hereby purchases, subject to the terms and conditions hereinafter set forth, . . .' and underneath the signature of said Frank E. Langley appear the words, 'Purchaser's Signature.'

"That said endorsement, which is made a part of said policy, contains a provision which reads as follows, to wit: 'In no event shall the extension of insurance provided herein be construed to cover a purchaser of any automobile, whether or not such automobile is being purchased on the installment plan.'

"That at the time of said accident, said Frank E. Langley was within that class of persons designated in that clause in said provision last quoted, which reads as follows, to wit: 'a purchaser of any automobile, whether or not such automobile is being purchased on the installment plan.'

"That at the time of said accident, neither said Frank E. Langley, nor said Ford automobile he was then driving, were covered by the so-called coverage provisions in said policy and its endorsements.

"That said policy, with its attached endorsements made a part thereof, do not cover liability for the damages for the injuries sustained by the plaintiffs in said actions at law against the Estate of said Frank E. Langley, deceased, in which said judgments were recovered as aforesaid, or any of them," and issued the decree appealed from.

The findings of the Justice on questions of fact have the weight of a jury verdict, and painstaking search of the record fails to reveal that in any particular his findings were not based on credible evidence.

They therefore stand, unless plaintiff, upon whom is the burden of proof, satisfies this Court, by evidence clear and convincing that the transactions of Cook-Ripley, Inc., with the Credit Company were not what their language imports.

During the course of the trial several exceptions were reserved, as follows — plaintiff's counsel asked the following question:

"Was this arrangement which you had with Mr. Langley, as you have testified, with relation to the purchase by him of this demonstrator,—was that the same plan or arrangement in force by your company with other salesmen who were paying for demonstrators used by them?"

Upon objection the question was excluded and to this ruling Exception No. 1 was taken, counsel saying, "I want to get into the record a determination as to whether this arrangement with Mr. Langley was peculiar to Mr. Langley, outside of the regular course this company pursued with all of its employees, as bearing upon the interpretation of the word and term 'employee' as used in the policy contract."

If there were occasion to interpret employment contract and sales contract under which Mr. Langley worked, the treatment of other employees by the company would not aid in such interpretation; and plaintiff was not aggrieved by this ruling because the Justice found as herein quoted that about one-half of the salesmen of the insured were employed under the salesmen plan.

The second and third exceptions may be passed upon together. The second was as to knowledge of the sales manager of the assured on what cars use of dealer's plates was permitted; the third, as to the sales manager's knowledge that purchasers of autos could not operate their vehicles on such plates, upon the theory that if such was the knowledge of the sales manager the assured had not made a sale of the car to Mr. Langley.

The written contract was not, in the opinion of the Justice, to be defeated by such evidence, and we hold the exclusion of the evidence of this sort correct.

Exceptions 4, 5, 6 and 8 were waived.

The seventh exception was taken to admission of the assignment of the original sales contract.

The document objected to was the proven original, containing assignment to the Universal Credit Company. The undisputed testimony is that the insured paid the manufacturer for the car and that on August 14, 1933, received its pay for the same from the Credit Company.

The witness was the office manager of the insured, in charge of the bookkeeping. She had testified to sale in accordance with the sales contract; assignment to the Credit Company and receipt of payment from the Credit Company. She testified that in transactions of the sort under examination, "the original goes to the finance company," that a copy of the contract, but not a copy of the assignment remains in her office, and that when she searched the files for original papers she found therein the exhibit objected to.

She testified that the document offered was sent to the Finance Company.

She did not claim recollection of mailing or delivering the document of assignment to the company.

The Justice concluded that such delivery was satisfactorily proven, and we approve of his decision.

The ninth exception arose on this wise: The office manager was being cross-examined by plaintiff's counsel as to "arrangements" between the Credit Company and insured. She had testified that she could not remember whether or not she had filled out the Langley "purchaser's statement." When asked if she remembered preparing such statement, she replied, "I could not remember." She

was then asked: "On this purchaser's statement did you set forth, or was it set forth, that Mr. Langley was a salesman for Cook-Ripley, Inc., at that time?"

On the contents of a writing, testimony of a witness who denies recollection of the same and asserts that others in the office do the typewriting is not admissible, if objected to.

So this exception falls.

The last question by counsel for plaintiff met objection and was ruled out. The office manager was being examined as to details of bookkeeping, as follows:

"Q. Have you got a record in your office—a separate account with the Universal Finance Company?

"A. Yes, we have.

"Q. And would those records show payments made by Cook-Ripley, Inc., to the Universal Finance Company for 1933 from April through the month of August, 1933? . . .

"A. Yes, sir.

"Q. Payments would be posted to individual account of the Universal Finance Company?

"A. An individual account? We have an account with the Universal Credit Company.

"Q. If and assuming that Cook-Ripley, Inc., made the monthly payments to Universal Credit Company upon cars used by salesmen as demonstrators under the same plan, would this record show those payments to the account of Universal Credit Company?"

Objected to. Excluded and exception reserved.

This ruling is sustained.

Mr. Langley purchased his automobile, August 11; no monthly payment on this car had been made, on the 19th day of the same month, when the collision occurred which caused his death.

*Exceptions overruled.*
*Appeal dismissed.*
*Decree below affirmed.*