JOSEPH LYMAN & others *vs.* STATE MUTUAL FIRE INSURANCE COMPANY.

A policy of insurance provided that " the company have the right of cancelling any policy at any time when two thirds of the directors present at any meeting shall deem there is sufficient cause therefor." *Held*, that a vote of the company that all deposit notes on existing policies be collected in full, and that all holders of policies be notified to pay their notes within thirty days, and that if the same are not paid within that time the policies would be cancelled, and an omission by the holder of a policy to pay his deposit note within that time, and a subsequent notice by the company to him, requesting him to pay the same immediately, or deliver the policy at the office to be cancelled, would not have the effect to cancel the policy.

Lyman & others *v.* State Mutual Fire Insurance Company.

A policy of insurance provided that whenever a building thereby insured should be altered, enlarged or appropriated to any other purpose than those therein mentioned, or the risk otherwise increased by the act or with the knowledge or consent of the insured, without the consent of the president first obtained in writing, the policy should be void. *Held,* that the policy was avoided by a deliberate and considerable alteration of the building, not incidental to the ordinary use of the property, made by a tenant with the knowledge of the assured, prolonged for three weeks, and while it lasted increasing the risk; although the same did not permanently increase the risk, or cause the fire.

A witness cannot be allowed to testify as an expert that in his judgment a risk upon a policy of insurance is increased by the existence of a certain state of facts, which involve no peculiar science or information, but are within the common knowledge of men.

CONTRACT upon a policy of insurance by which the defendants insured the plaintiffs' building situated at the corner of State and Washington Streets in Boston against loss or damage by fire for seven years from February 1st 1859. The policy contained the following stipulations: " That the company have the right of cancelling any policy at any time when two thirds of the directors present at any meeting shall deem that there is sufficient cause therefor; in such case, the secretary shall give the party insured and the party to whom the policy is payable in case of loss ten days' notice in writing of the determination of the directors to exercise this right." " That whenever a building hereby insured shall be altered, enlarged or appropriated to any other purposes than those herein mentioned, or the risk otherwise increased by the act or with the knowledge or consent of the insured, without the consent of the president first obtained in writing, this policy shall be void."

At the trial in this court, before *Chapman*, J., it was agreed that the building was damaged by fire on the 6th and 7th of January 1865, and that, if the plaintiffs were entitled to recover, the amount to which they were entitled was $3636.33 and interest. The defendants contended that the policy was cancelled, by the following proceedings: At a meeting of the company held January 21st 1862 it was voted " that all deposit notes on existing policies be collected in full, and that all holders of policies be notified to pay their notes within thirty days; and that if the same are not paid within that time said policies will be cancelled." A copy of this vote was sent to the plaintiffs, with a circular, calling for payment of the note given for half

the premium on this policy; and, no attention having been paid to it, in April 1862 the secretary sent another notice as follows: " You not having responded to the vote of the directors passed January 21 calling for the payment of deposit notes are hereby requested to pay yours given for policy No. 21,228 [the number of the policy in suit] immediately, or deliver said policy at the office to be cancelled." The plaintiffs never paid the note.

In December 1864 the plaintiffs let the premises to George W. Dougherty, by a lease which was to commence January 1st 1865, but with liberty to make alterations in the building for his and his tenants' use, before the term commenced; and on the 14th of December his workmen began to work. " The building contained an upper and a lower cellar. The first story and the upper cellar had been occupied by one Chaffin as a gentleman's furnishing store. Dougherty intended to occupy the first story as a broker's office, and to have the upper cellar occupied as a broker's office. His workmen accordingly proceeded to take out the shelves and counters which had been used by Chaffin, and to put in new counters. They also put in a new water-closet, took out some stairs leading to the upper cellar, and put in a new flight, and also put an outside door on the side next to State Street, where there had formerly been a window. Most of the work was done outside the building; but in putting up the counters and stairs in the building, some shavings were made, which were removed every night. Most of the shavings were carried off by children, who took them in baskets or bags; a fire was kept in a stove during the daytime, and sometimes during the night; but there had been a stove there before. The jury found specially that this temporarily increased the risk, and that Mr. Lyman had notice of the alterations while they were in progress; they also found that the alterations which were made did not increase the risk permanently." The findings of the jury were in answer to written interrogatories. This was done by consent of counsel. Neither party desired a further verdict to be rendered.

There was no evidence tending to show that the fire was caused by the work of the carpenters, or that the alterations

were not carefully made, or were unnecessary for the new tenants.

It did not appear that the upper cellar had been fitted for occupation at the time of the fire, or that anything had been done towards fitting it for such a purpose; and the plaintiffs contended that the taking away of the fixtures of Chaffin, and putting in the fixtures of Dougherty for a broker's office, and the addition of a water-closet, stairs in place of the old stairs, outer and inner door, though these alterations created a temporary increase of risk while they were in progress, did not avoid the policy.

The defendants examined several experts on the question whether the risk was increased by the alterations made in the building. Among other questions put to them was the following, which was agreed by counsel to be in substance a sufficient statement of the case: "In the case of a stone building situated in Boston, if the fixtures for a store are taken out and fixtures for a banking house or office put up, the fixtures being prepared elsewhere, and in putting them up carpenters are occupied about three weeks, making more or less shavings nearly every day, but not a great many, such shavings being daily carried off by children; also the upper floor taken up, and a new floor of tiles laid; a staircase taken away which connected that floor with the cellar, and a new staircase made connecting that cellar with the street; a water-closet put up; the shelves and fixtures taken out from the cellar, and a partition made alongside of the new staircase; a fire being kept in the stove already in the building during the day, and sometimes during the night; whether or not, in your judgment, is the risk increased beyond that arising from the occupation of the store and cellar for a gentlemen's furnishing store?" The plaintiffs' counsel objected to the question; but it was allowed by the judge to be put. The judge had ruled, however, and it was stated to some of the witnesses, that the plaintiff had a right to occupy the building for any of the purposes mentioned in the policy, viz., for a store, offices, and printing-offices; and that an increased risk must be a greater risk than such occupation would create.

The case was reported for the determination of the full court.

*C. W. Loring & F. C. Loring*, for the plaintiffs, cited, in reference to the increase of risk, *Stetson* v. *Mutual Ins. Co.* 4 Mass. 330; *Merriam* v. *Middlesex Ins. Co.* 21 Pick. 162; *Loud* v. *Citizens' Ins. Co.* 2 Gray, 221; *O'Neil* v. *Buffalo Ins. Co.* 3 Comst. 122; *Leggett* v. *Ætna Ins. Co.* 10 Rich. (S. C.) 202; *Williams* v. *New England Ins. Co.* 31 Maine, 219; *Shaw* v. *Robberds*, 6 Ad. & El. 75; *Dobson* v. *Sotheby*, Mood. & Malk. 90; and in reference to the admissibility of the testimony of experts, 1 Greenl. Ev. § 440; *Campbell* v. *Richards*, 5 B. & Ad. 840.

*T. S. Harlow*, for the defendants, cited, in reference to the increase of risk, *Whitmarsh* v. *Charter Oak Ins. Co.* 2 Allen, 581; *Evans* v. *Trimountain Ins. Co.* 9 Allen, 329; *Hoxsie* v. *Providence Ins. Co.* 6 R. I. 517; *Howell* v. *Baltimore Equitable Society*, 16 Maryland, 377; *Stokes* v. *Cox*, 1 Hurlst. & Norm. 533; *Hobby* v. *Dana*, 17 Barb. 111; *Dodge County Ins. Co.* v. *Rogers*, 12 Wisconsin, 337; *Glen* v. *Lewis*, 8 Exch. 618; and in reference to the admissibility of the testimony of experts, *Webber* v. *Eastern Railroad*, 2 Met. 149; *Hawes* v. *New England Ins. Co.* 2 Curtis C. C. 229; *Schenk* v. *Mercer County Ins. Co.* 4 Zabr. (N. J.) 447; *Hobby* v. *Dana*, 17 Barb. 111.

GRAY, J. Assuming that the defendants had a right to cancel the policy, it is very clear that their action did not amount to a cancellation. Neither the vote of January 1862, nor the circular of April 1862, was more than a notice to the plaintiff that in a certain event the defendants would cancel his policy; and there is no evidence that they ever did cancel it.

A more important question arises under the third condition of the policy. The defendants contend that by virtue of this condition any alteration of the building, whether increasing the risk or not, avoided the policy. The plaintiffs contend that no alteration which did not permanently increase the risk would have that effect. The court is of opinion that neither of these positions can be maintained.

This condition makes it essential, in order to avoid the policy, that " the building shall be altered, enlarged, or appropriated to any other purposes than those herein mentioned, or the risk

otherwise increased." The words are not so arranged as to make the meaning perfectly clear; but taking them all together, there can be no doubt that they include nothing which does not increase the risk. If it had been intended that any alteration, or enlargement, or appropriation to new purposes, which did not increase the risk, should avoid the policy, the word " otherwise " in the last clause above quoted, would have been superfluous. The insertion of that word shows that the previous part of the condition also relates to changes which increase the risk. The reasonable interpretation of the condition is to read it as if the words had been transposed thus : " Whenever the risk shall be increased by altering or enlarging the building, or appropriating it to any other purposes than those herein mentioned, or otherwise." The case is within the principle of *Rice* v. *Tower*, 1 Gray, 426, in which a policy which was to be void " if the assured shall alter or enlarge a building so as to increase the risk, or appropriate it to other purposes than those mentioned in the application," was held not to be avoided by an appropriation of the building to a new use which did not increase the risk. See also *Stokes* v. *Cox*, 1 Hurlst. & Norm. 533; reversing *S. C.* Ib. 320. Whether the risk was increased was a question for the jury. *Curry* v. *Commonwealth Ins. Co.* 10 Pick. 535. *Rice* v. *Tower*, 1 Gray, 426.

But although this condition is limited to acts which increase the risk, it is in other respects very sweeping, and includes every manner of increasing the risk, whether by alteration, enlargement, appropriation to new uses, or otherwise. We have no occasion to consider whether this policy would be avoided (as different policies have been held not to be, in cases cited for the plaintiffs,) by making ordinary repairs, without the consent of the insurers; or by a casual or gratuitous, though unauthorized use, for a single day or night, or a single experiment. The facts in this case show a deliberate and considerable alteration of the building, not incidental to the ordinary use of the property, made by the tenant with the knowledge of the assured, prolonged for three weeks, and, while it lasted, increasing the risk, as the jury have found. There is nothing in the words of this condition to

warrant us in holding that an alteration which increased the risk for such a length of time did not avoid this policy, merely because the duration of the increase of risk would not be unlimited.    On the contrary, one probable object of the condition requiring the written consent of the president of the company in case of increase of risk seems to us to have been to enable the insurers to charge an additional premium in such a case as this. 3 Kent Com. (6th ed.) 374.    *Worcester* v. *Worcester Ins. Co.* 9 Gray, 27.    *Glen* v. *Lewis,* 8 Exch. 618.    If the risk was increased at the time of the fire, contrary to the terms of the policy, the insurers were not liable, even if the acts which increased the risk did not cause the fire.    *Merriam* v. *Middlesex Ins. Co.* 21 Pick. 162.

The only remaining question is whether the opinions of witnesses, which were admitted to prove an increase of risk, were competent evidence; and upon consideration we are unanimously of opinion that they were not.    The decision of this point, as presented by the report, requires no extended examination of authorities; for it is quite clear that no witness can be permitted to testify to his own individual opinion merely, upon the issue whether the risk was increased, when that depends upon facts which involve no peculiar science or information, but are within the common knowledge of men.    *Mulry* v. *Mohawk Valley Ins. Co.* 5 Gray, 541.    *White* v. *Ballou,* 8 Allen, 408. *Durrell* v. *Bederly,* Holt N. P. C. 283.    *Berthon* v. *Loughman,* 2 Stark. R. 258.    *Campbell* v. *Rickards,* 5 B. & Ad. 840.    *Hawes* v. *New England Ins. Co.* 2 Curtis C. C. 230.    1 Arnould on Ins. 572.    As the evidence admitted against the plaintiffs' objection was of this character, and we cannot know how much the jury were influenced by it in finding that the risk was temporarily increased, their verdict must be set aside, and a

*New trial ordered.*