RUTH POISSON

*vs.*

TRAVELERS INSURANCE CO. AND PORTSMOUTH GARAGE CO.

York.    Opinion, April 1, 1943.

*Armstrong & Spill,* by *Simon Spill,* and
*Lester M. Bragdon,* for the plaintiff.

*Verrill, Hale, Dana & Walker,* for the defendants.

SITTING: STURGIS, C.J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

MANSER, J.   Equity appeal by defendants. The bill is brought under R. S., c. 60, §§ 177-180, to reach and apply insurance money to the satisfaction of judgments obtained by the plaintiff against Ross F. Eslinger and Ross B. Eslinger, by reason of damages sustained as the result of an automobile accident, which occurred in Wells, Maine. The negligence of Ross F. Eslinger was the basis of the action, and one judgment was recovered against him personally. The other judgment against Ross B. Eslinger, his father, was recovered upon the ground that the son was employed on the business of the father at the time of the accident.

The plaintiff now seeks to impress liability upon the Travelers Insurance Co. by reason of an automobile policy issued to the Portsmouth Garage Co. No suit has been brought or judgment at law recovered establishing legal responsibility on the part of the Portsmouth Garage Co. for the accident.

It is claimed, however, that in the present equity proceedings, it was competent to show that Eslinger, Sr. was in the employ of the Portsmouth Garage Co.; that he delegated to his son authority to perform a ministerial act which affected the Company's interest; that the son thereupon became a sub-agent of the Company, and as the accident happened while he was so employed, and while using a car owned by the Company, both of the Eslingers must be regarded as servants of the Company and as such insured under the policy issued to it.

Otherwise stated, the contentions of the plaintiff are that the automobile was owned by the Garage Company; was in operation for a purpose affecting the business of the Company, the named assured; and that the relationship of the Eslingers to the Garage Company brought them within the coverage terms of the policy according to its proper legal interpretation.

The presiding Justice admitted the evidence, sustained the plaintiff's contentions, and by appropriate decree, ordered the Travelers Insurance Co. to satisfy the judgments obtained by the plaintiff against the Eslingers.

While the questions of fact involved are argued by counsel on both sides, the record does not show that the findings of the presiding Justice thereon are clearly erroneous or unsupported by evidence. It is the well-established rule that the appellate court will not reverse such findings unless they are clearly wrong. *Hartley* v. *Richardson,* 91 Me., 424, 40 A., 336; *National Bank* v. *Reynolds,* 127 Me., 340, 143 A., 266, 60 A. L. R., 712.

The real question, however, is whether the facts so found justify the legal conclusions reached.

Fundamentally, the question of whether either or both of the Eslingers were insured under the policy issued by the Travelers Insurance Co. to the Portsmouth Garage Co. requires consideration of the applicable statute and of the terms of the policy itself.

There is no privity of contract between the plaintiff, (who secured judgments against the individual Eslingers,) and the Travelers Insurance Company which issued a liability policy to the Portsmouth Garage Co. If the proceeds of the policy can be reached by the plaintiff, it is only by virtue of statutory authority or by express provision of the policy. *Colby* v. *Insurance Co.,* 134 Me., 18, 181 A., 13.

The statutory provision is found in R. S., c. 60, § 178, as follows:

> "Whenever any person . . . recovers a final judgment against any other person, firm, or corporation, for any loss or damage specified in the preceding section, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a bill in equity, in his own name, against the insuring company to reach and apply said insurance money;

provided that when the right of action accrued the judgment debtor was insured against said liability, . . ."

To determine, then, whether the Eslingers, the judgment debtors, were insured, recourse must be had to the policy itself. It contains an explicit definition of the word "Insured" as used therein, in the following language:

"The unqualified word 'insured' includes not only the named insured but also any partner thereof if the named insured is a partnership, and the president, vice president, secretary and treasurer of the corporation if the named insured is a corporation, with respect to the operation, for business or pleasure of any automobile owned by or in charge of the named insured, except an automobile owned by such partner or officer or by a member of his family; . . ."

It is conceded that the Portsmouth Garage Company, the named insured, is a corporation, and that neither of the Eslingers hold the position of president, vice president, secretary or treasurer of the corporation.

The plaintiff urges, in effect, that the corporation is but a theoretical legal entity which must carry on its operations, including those specified in the policy, by human agents; that it is responsible for the negligence of its servants so employed; that their acts within the scope of their employment, were the acts of the corporation itself, and the policy by necessary implication must be held to indemnify the corporation for the negligent acts of its agents, and consequently its liability can be established in these proceedings.

It is further noted that the coverage of the policy includes "the ownership, maintenance or use of any automobile for any purpose in connection with the above defined operations, and also for pleasure use."

This, contends the plaintiff, lends emphasis to the interpretation that the persons who actually conduct the operations are insured.

The guiding principles of construction are well expressed in *Johnson* v. *Insurance Co.*, 131 Me., 288, 161 A., 496, 498, as follows:

"It is the general rule that if the language of an insurance policy is ambiguous, or susceptible of interpretations differing in import, construction should be most strongly against the insurer, on whom the obligation of the contract rests, and who is supposed to have chosen the wording.

"Another rule, which safeguards the first against any abuse of its application, is this: If the terms of the policy present no ambiguity, they are to be taken and understood, as a usual thing, according to their plain and ordinary sense. Parties contracting in writing are supposed to have the intentions which their agreement effectually manifests.

"True, literalism should not be pushed to the length of frustrating, in whole or in part, the general intention the contract evidences; nor, on the other hand, should words be made to mean what they do not really say. A contract should be so construed as to give it only such effect as was intended when it was made."

In policies of this general character which have been brought to judicial attention, there are found definitions as to the persons or class of persons included in the designation "named assured." Illustrations appear in our cases of *Colby* v. *Insurance Co.*, 134 Me., 18, 181 A., 13; *Rioux* v. *Assurance Co.*, 134 Me., 459, 187 A., 753; *Johnson* v. *Insurance Co.*, supra; *Coffey* v. *Gayton et al.*, 136 Me., 141, 4 A. (2d), 97. These differ from one another, and unless some statutory requirement controls, it is, of course, competent for the Insurer and Insured to determine by definite contract the extent of the coverage. In an ordinary contract, the parties who execute the same are usually the only ones bound by its obligations or entitled to its benefits. From the very facility of use of a particular motor vehicle by several

persons, however, has apparently arisen the advisability of including others than the single policy-holder in what has come to be known as "extended coverage" clauses. The inclusion of coverage in the policy under consideration is definite, explicit and certain. It is limited to the corporation, its president, vice president, secretary and treasurer. The language is clear and the Court can give it only such effect as was intended when it was made. While it is not necessary for reasons to be assigned for the particular provision in the policy under scrutiny, it is obvious that it safeguards the garage corporation and yet does not deny to persons injured by the negligence of the corporation's employees the benefit of its indemnifying provisions. To be entitled to such benefit, the corporation itself must be sued for the tortious acts of its employes. A judgment must be recovered against the corporation in a suit in which the very question of whether the tort feasor was the servant and agent of the corporation is put in issue, and the corporation thus becomes entitled to a jury verdict thereon. In the present instance, two individuals were sued and judgments obtained. The corporation's responsibility for their acts was not in such suits of consequence. The Insurance Co. and the Portsmouth Garage Co., by the policy contract entered into between them, limited the insurance liability, and in legal effect made it incumbent upon one who suffered injury to procure a judgment at law against the Company or one of its four named officers, in order to create liability on the part of the Insurance Co.

The liability of the insurer may be extended by statutory requirement, and this, as it happens, is evidenced by the policy in question. The principal establishment of the Portsmouth Garage Co. is located in New Hampshire. Under Chapter 161 of the Laws of 1937 of that State, there is such a requirement, and we find that the policy contains an endorsement "with respect to suits and claims arising out of automobile accidents occurring within the State of New Hampshire" by the terms of which "the coverage provided herein is *extended* to any person who has obtained possession or control of the motor

vehicle of the named assured with his express or implied consent." It is not contended that this requirement has application to an accident which happened in Maine.

*Appeal sustained.*
*Decree reversed.*
*Remanded for decree dismissing the bill.*