HUBER ENGINEERED WOODS, LLC, PLAINTIFF-APPELLEE v. CANAL INSURANCE
COMPANY, DEFENDANT-APPELLANT

No. COA09-335

(Filed 16 March 2010)

**1. Insurance— automobile insurance contract—applicable law**

The substantive law of Maine applied to a breach of contract
case between a North Carolina building products manufacturer
and an insurance company because the last act to make the auto-
mobile insurance contract binding occurred in Maine.

**2. Insurance— automobile—duty to indemnify—summary
judgment**

The trial court erred in deciding on summary judgment the
issue of defendant insurer's duty to indemnify plaintiff because
an insurer may not litigate its duty to indemnify until the liability
of the insured has been determined, and plaintiff's liability in this
case had not been determined when the action was filed.

**3. Insurance— automobile—duty to defend—insured—policy
terms ambiguous**

Plaintiff was an "insured" under the terms of an automobile
insurance policy because plaintiff was facing liability because of
"acts or omissions" of an employee of a named insured. De-
fendant's argument that the language "acts or omissions" neces-
sarily meant "*negligent* acts or omissions" was overruled. The
policy did not require negligence on the part of the named in-
sured or its employees for plaintiff to be an "insured."

1

**4. Insurance— automobile—duty to defend—insured—policy terms ambiguous**

Defendant's argument that the term "because of" acts or omissions required a finding of proximate cause and limited defendant's duty to defend to instances of vicarious liability was overruled. The term was, at a minimum, ambiguous and therefore interpreted in favor of coverage. Because plaintiff's alleged liability could have arisen from an act or omission on the part of the insured under the policy, it was sufficient to trigger defendant's duty to defend.

**5. Insurance— automobile—duty to defend**

The trial court did not err in declaring that defendant insurance company had a duty to defendant plaintiff in a wrongful death action brought by the estate of a deceased employee because the employee exclusion clause of the automobile insurance policy at issue did not bar coverage under the facts of the case.

JACKSON, Judge, concurring in the result.

STEELMAN, Judge, concurring in part and dissenting in part.

Appeal by Defendant from order entered 15 December 2008 by Judge Jesse B. Caldwell, III in Superior Court, Mecklenburg County. Heard in the Court of Appeals 30 September 2009.

*Robinson, Bradshaw & Hinson, P.A., by R. Steven DeGeorge, for Plaintiff-Appellee.*

*Smith Moore Leatherwood LLP, by Robert D. Moseley, Jr., C. Fredric Marcinak III, Sidney S. Eagles, Jr., and Elizabeth Brooks Scherer, for Defendant-Appellant.*

McGEE, Judge.

Plaintiff is a North Carolina building products manufacturer and Defendant is a South Carolina insurer of trucking operations. W.M. Jr. Trucking, Inc. (W.M.) is a Maine trucking company. Plaintiff and W.M. entered into a contract (the contract) in 2004. In the contract, W.M. agreed to provide Plaintiff with trucking services. The contract required W.M. to maintain insurance, including "[b]road form comprehensive general liability insurance . . . for personal injury and property damage covering liability assumed by [W.M.] under this AGREEMENT." W.M. obtained a commercial automobile liability pol-

icy (the policy) from Defendant. According to an affidavit from Wallace Mahan, Jr., W.M.'s president, W.M. intended for the policy to fulfill the requirements of the contract, and "directly benefit" Plaintiff, affording Plaintiff with "protection against . . . bodily injuries arising from the performance of [W.M.'s] trucking services."

Joseph Nichols (Nichols), a truck driver employed by W.M., was fatally injured on 17 June 2005 after falling from his truck while attempting to secure a tarp over a load of plywood at Plaintiff's manufacturing plant in Easton, Maine. On 11 September 2006, Nichols' estate filed a wrongful death action against Plaintiff in superior court, Aroostook County, Maine. Plaintiff filed a complaint against Defendant in Mecklenburg County Superior Court on 4 March 2008. Plaintiff sought (1) compensatory damages for breach of contract and (2) compensatory damages, punitive damages, and attorney's fees for "bad faith." Plaintiff also sought an order compelling Defendant to "defend and indemnify" Plaintiff in the Maine action.

Defendant filed a motion to dismiss Plaintiff's action on 5 May 2008, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). Plaintiff amended its complaint on 28 May 2008, specifically asking for a declaratory judgment that Defendant was obligated to defend and indemnify Plaintiff from the claims made against Plaintiff in the Maine action. By motion filed 9 June 2008, Defendant again moved to dismiss Plaintiff's amended complaint, pursuant to Rule 12(b)(6). In an order entered 22 July 2008, the trial court denied Defendant's motion to dismiss.

Plaintiff moved for summary judgment on its declaratory judgment action on 10 September 2008. By motion filed 15 September 2008, Defendant moved for summary judgment on the declaratory judgment action. By order entered 15 December 2008, the trial court denied Defendant's motion for summary judgment, granted Plaintiff's motion for summary judgment, and declared that the policy "provides defense and indemnity coverage to [Plaintiff] for the claims asserted against [Plaintiff]" in the Maine action. Defendant appeals.

In Defendant's two arguments on appeal, it contends that the trial court erred in denying its motion for summary judgment, in granting summary judgment in favor of Plaintiff, and in determining that the policy required Defendant to both defend and indemnify Plaintiff with respect to Nichols' 11 September 2006 action. We agree in part.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." The moving party bears the burden of demonstrating the lack of triable issues of fact. Once the movant satisfies its burden of proof, the burden then shifts to the non-movant to present specific facts showing triable issues of material fact. On appeal from summary judgment, "we review the record in the light most favorable to the non-moving party."

*Broughton v. McClatchy Newspapers, Inc.,* 161 N.C. App. 20, 26, 588 S.E.2d 20, 25-26 (2003) (internal citations omitted).

We first note that though this appeal is from an interlocutory order, the interlocutory order affects a substantial right of Defendant and, therefore, this appeal is properly before us. *Carlson v. Old Republic Ins. Co.,* 160 N.C. App. 399, 401, 585 S.E.2d 497, 499 (2003) ("An order of partial summary judgment on the issue of whether an insurance company has a duty to defend in the underlying action 'affects a substantial right that might be lost absent immediate appeal.' " (Citation omitted)).

"Our review of the trial court's construction of the provisions of an insurance policy is *de novo.*" *Smith v. Stover,* 179 N.C. App. 843, 845, 635 S.E.2d 501, 502 (2006) (citation omitted).

**[1]** Next, we must determine the correct substantive law to apply in this case.

> [T]he general rule is that an automobile insurance contract should be interpreted and the rights and liabilities of the parties thereto determined in accordance with the laws of the state where the contract was entered even if the liability of the insured arose out of an accident in North Carolina. With insurance contracts the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract.

*Fortune Ins. Co. v. Owens,* 351 N.C. 424, 428, 526 S.E.2d 463, 465-66 (2000); *see also Szymczyk v. Signs Now Corp.,* 168 N.C. App. 182, 187, 606 S.E.2d 728, 733 (2005) ("[T]he interpretation of a contract is governed by the law of the place where the contract was made[.]"); *N.C. Farm Bureau Mut. Ins. Co. v. Holt,* 154 N.C. App. 156, 163, 574 S.E.2d 6, 11 (2002) (citation omitted). Though this action was filed in North Carolina, Plaintiff and Defendant stipulated that W.M.

"obtained an automobile liability policy from [Defendant]. The [policy] was issued and delivered in Maine to [W.M.]." We therefore look to Maine substantive law to interpret the policy.

**[2]** We first address the issue of indemnification.

> An insurer may not litigate its duty to indemnify until the liability of the insured has been determined. The duty to defend is broader than the duty to indemnify, and an insurer may have to defend before it is clear whether a duty to indemnify exists.

*Hanover Ins. Co. v. Crocker*, 688 A.2d 928, 929 n.1 (Me. 1997) (internal citations omitted); *see also Maine State Academy of Hair Design v. Commercial Union Ins. Co.*, 699 A.2d 1153, 1160 n.2 (Me. 1997); *State Mut. Ins. Co. v. Bragg*, 589 A.2d 35, 36 (Me. 1991); *American Policyholders' Ins. Co. v. Cumberland Cold Storage* Co., 373 A.2d 247, 250-51 (Me. 1977); *but see Farm Bureau Mut. Ins. Co. v. Waugh*, 188 A.2d 889, 891-92 (Me. 1963). We are therefore constrained to hold that the trial court erred in deciding the issue of indemnification by summary judgment because the "liability of the insured" had not been determined when this action was filed, and we vacate that portion of the 15 December 2008 order.

**[3]** We must next address the issue of Defendant's duty to defend Plaintiff.

> We determine the duty to defend by comparing the allegations in the underlying complaint with the provisions of the insurance policy. "If a complaint reveals a 'potential . . . that the facts ultimately proved may come within the coverage,' a duty to defend exists." *See also Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1352 (Me. 1996) (describing the comparison test as whether "there is *any potential basis* for recovery . . . regardless of the actual facts on which the insured's ultimate liability may be based," and stating that "[a]n insured is not at the mercy of the notice pleading of the third party suing him to establish his own insurer's duty to defend."). "Even a complaint which is legally insufficient to withstand a motion to dismiss gives rise to a duty to defend if it shows an intent to state a claim within the insurance coverage."

*Maine State Academy*, 699 A.2d at 1156 (internal citations omitted).

> For the judicial construction of policies of insurance this Court has adopted and soundly applied certain rational canons.

"No rule, in the interpretation of a policy, is more fully established, or more imperative and controlling, than that which declares that, in all cases, it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to indemnity, which, in making the insurance, it was his object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain his claim and cover the loss must, in preference, be adopted. While courts will extend all reasonable protection to insurers, by allowing them to hedge themselves about by conditions intended to guard against fraud, carelessness, want of interest, and the like, they will nevertheless enforce the salutary rule of construction, that, as the language of the condition is theirs, and it is therefore in their power to provide for every proper case, it is to be construed most favorably to the insured."

. . . .

"In case of ambiguity or inconsistency, it is often said that the court will give the policy a construction most favorable to the assured, for the reason that, as the insurer makes the policy and selects his own language, he is presumed to have employed terms which express his real intention."

. . . .

"A contract of insurance, like any other contract, is to be construed in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. All parts and clauses must be considered together that it may be seen if and how far one clause is explained, modified, limited, or controlled by the others."

*Waugh*, 188 A.2d at 891-92 (internal citations omitted); *see also Tinker v. Continental Ins. Co.*, 410 A.2d 550, 553-54 (Me. 1980).

Defendant argues that Plaintiff is not an "insured" under the policy. The policy includes a section entitled "Persons Insured." Plaintiff argues, and Defendant disputes, that Plaintiff is an "insured" pursuant to section (d) of the "Persons Insured" provision. The "Persons Insured" provision states in relevant part: "Each of the following is an insured under [the policy] to the extent set forth below:"

. . . .

(d) any other . . . organization but only with respect to . . . its liability because of acts or omissions of an **insured** under (a), (b) or (c) above.

Section (c) is the provision mentioned in section (d) relevant to this appeal. Section (c) states in relevant part:

any other person while using an **owned automobile** . . . with the permission of the **named insured** [W.M.], provided his actual . . . use thereof is within the scope of such permission, but with respect to **bodily injury** . . . arising out of the loading or unloading thereof, such other person shall be an **insured** only if he is:

. . . .

(2) an employee of the **named insured**[.]

Nichols was employed by W.M., and he was fatally injured while using an "owned automobile" of W.M., with permission, and within the scope of that permission. Nichols was therefore an "insured" under the policy. Plaintiff argues that pursuant to section (d), it is an "insured" because it is facing "liability because of acts or omissions of an insured," namely Nichols.

Defendant contends that Plaintiff is not an "insured" because section (d) does not cover Plaintiff. Defendant argues, citing several cases from other jurisdictions, that section (d) is a vicarious liability clause. *See, e.g., Vulcan Materials Co. v. Casualty Ins. Co.*, 723 F.Supp. 1263, 1265 (N.D. Ill. 1989); *Garcia v. Federal Ins. Co.*, 969 So.2d 288 (Fla. 2007); *Transportation Ins. Co. v. George E. Failing Co., Div. of Azcon*, 691 S.W.2d 71 (Tex. App. 1985). While we agree with Defendant that these opinions interpret provisions similar to the provision at issue in this case as simple vicarious liability provisions, none of these opinions have any precedential value in Maine. We find no Maine cases on point, and thus must turn to the Maine laws of insurance policy interpretation to resolve this issue.

Defendant contends, relying on cases like *Vulcan, Garcia*, and *Transportation Ins. Co.*, that the language "acts or omissions" contained in section (d) necessarily means *negligent* "acts or omissions," and is thus restricted to instances where negligence on the part of the insured has been alleged, and forms part of the basis for the underlying suit. Defendant argues, in other words, that because Nichols' action against Plaintiff does not rely on any alleged negligence of Nichols, but solely on the alleged negligence of Plaintiff, section (d) does not apply, and Defendant has no duty to defend.

However, section (d) of the policy does not mention "vicarious liability," and does not speak in terms of *"negligent* acts or omissions," but simply in terms of "acts or omissions." (Emphasis added). Defendant "enjoyed full contractual freedom when it issued the policy. Had [Defendant] elected to [limit the coverage in the manner it now argues] it could have effected its purpose with trifling effort." *Waugh*, 188 A.2d at 892. There is a dispute concerning the meaning of "acts or omissions," and this language is susceptible to two reasonable interpretations. "Whether or not a contractual term is ambiguous is a question of law." *Bourque v. Dairyland Ins. Co.*, 741 A.2d 50, 53 (Me. 1999).

> A policy is ambiguous if it is reasonably susceptible of differing interpretations. In determining whether the contract is ambiguous, it is evaluated as a whole and must be construed in accordance with the intention of the parties. When applying these rules of construction, we view the language from the perspective of an average person, untrained in either the law or insurance.

*Foundation for Blood Research v. St. Paul Marine & Fire Ins. Co.*, 730 A.2d 175, 180 (Me. 1999) (citations omitted). We have not found any Maine opinion interpreting "acts or omissions" in this context. We therefore look to other jurisdictions for guidance. As we have already noted, Defendant cites to cases interpreting language very similar to that included in the policy before us as constituting a simple vicarious liability provision. In each of these cases, the appellate court assumed the term "acts or omissions" referred to legal negligence. Other courts have interpreted "acts or omissions" differently.

In *Maryland Cas. Co. v. Regis Ins. Co.*, 1997 U.S. Dist. LEXIS 4359 (E.D. Pa. Apr. 1, 1997), the United States District Court rejected the argument that the term "act or omission" in an insurance policy required negligence.

> The plain or ordinary meaning of "act or omission" only requires the named insured to do or fail to do something. Negligence would require the named insured to do [or fail to do] something "which a reasonable [person] guided by those ordinary considerations which ordinarily regulate human affairs, would do [or would not do]."

*Maryland Cas. Co. v. Regis Ins. Co.*, 1997 U.S. Dist. LEXIS 4359 at 13-14. The court in *Maryland Cas.* held that the term "act or omission" was ambiguous, and it looked with disfavor on another United

States District Court opinion that had "added the word 'negligent' before acts or omissions[;]" stating it would "not read such language into the [policy] where none exists in order to interpret the clause in favor of the insurer." *Id.* at 15, n4. In *Dillon Cos. v. Royal Indem. Co.*, 369 F. Supp. 2d 1277, 1288 (D. Kan. 2005) the court found "that a reasonable insured could understand 'acts or omissions' to mean all acts or omissions, negligent or not." The *Dillon* Court concluded "that the phrase 'acts and omissions of [the employer]' include[d] any act or failure to act by [an employee,]" not just negligent acts or omissions by the employee. *Id.*; *see also United States Fire Ins. Co. v. Aetna Life & Cas.*, 684 N.E.2d 956, 962 (Ill. App. Ct. 1st Dist. 1997).

We agree with Judge Jackson in her concurring opinion that, on its face, the term "act or omission" appears unambiguous. We do not have to reach a holding on that issue, however. Because we are applying Maine substantive law, we decide not to make an unnecessary holding on the definition of "act or omission." We need only hold that the term "act or omission" is, at a minimum, reasonably susceptible to differing interpretations. "Act or omission" as it is utilized in the policy is, at a minimum, ambiguous. *Blood Research*, 730 A.2d at 180; *see also Foremost Ins. Co. v. Levesque*, 868 A.2d 244, 247 (Me. 2005). Ambiguity will be decided in favor of coverage, unless the clear intent of the parties to the policy dictates otherwise. *Waugh*, 188 A.2d at 891-92. We do not find any clear expression of intent on the part of either Defendant or W.M., at the time the policy was executed, to exclude Plaintiff from coverage under the policy for the action filed against Plaintiff. However, the president of W.M. executed an affidavit subsequent to the death of Nichols, stating that it was W.M.'s "understanding and intention that [the policy] provided the coverage called for in [the contract], and that said insurance would, therefore, directly benefit [Plaintiff.] It was [W.M.'s] understanding and intention to afford such customers protection against . . . bodily injuries arising from the performance of [W.M.'s] trucking services." We hold that section (d) of the policy did not require negligence on the part of W.M. (or Nichols), but merely that Plaintiff was subject to liability "because of" the acts or omissions of W.M. or Nichols.

[4] Defendant argues that the term "because of" in the relevant policy provision also limits Defendant's duty to defend to instances of vicarious liability. Defendant contends that the term "because of" requires a finding of proximate cause, whereas Plaintiff argues "because of" should be defined by its commonly understood meaning. Unfortunately, Defendant does not define "because of" in the policy.

Courts in multiple jurisdictions have struggled to decide how language such as "because of," "as the result of," "caused by," and "arising out of" should be interpreted. Certain courts have decided some of these terms require a finding of proximate cause, while other courts have found that these terms merely require a finding of "but for" causation. *Vulcan*, 723 F. Supp. at 1265; *Garcia v. Federal Ins. Co.*, 969 So. 2d 288 (Fla. 2007) (opinions interpreting policy phrases including "because of" as referring to proximate cause or requiring evidence supporting vicarious liability).

> The words 'arising out of' are not words of narrow and specific limitation but are broad, general, and comprehensive terms affecting broad coverage. They are intended to, and do, afford protection to the insured against liability imposed upon him for all damages caused by acts done in connection with or arising out of such use. They are words of much broader significance than 'caused by.' They are ordinarily understood to mean . . . 'incident to,' or 'having connection with' the use of the automobile[.]

> The parties do not, however, contemplate a general liability insurance contract. There must be a causal connection between the use and the injury. This causal connection may be shown to be an injury which is the natural and reasonable incident or consequence of the use, though not foreseen or expected, but the injury cannot be said to arise out of the use of an automobile if it was directly caused by some independent act or intervening cause wholly disassociated from, independent of, and remote from the use of the automobile.

*State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 539, 350 S.E.2d 66, 69 (1986); *see also Maryland Cas.*, 1997 U.S. Dist. LEXIS 4359 at 13 (holding that "as a result of" did not impose "a greater causation requirement than the 'but for' causation applied by courts in cases with clauses using 'arising out of' "); *Brewer v. Cabarrus Plastics, Inc.*, 357 N.C. 149, 579 S.E.2d 249 (2003), *adopting the dissent from Brewer v. Cabarrus Plastics, Inc.*, 146 N.C. App. 82, 88, 551 S.E.2d 902, 906 (2001) ("In the common vernacular, the phrases 'but for,' *'because of,'* and 'on account of' are used interchangeably.") (emphasis added); *Warren v. Wilmington*, 43 N.C. App. 748, 750, 259 S.E.2d 786, 788 (1979) (" 'Arising out of' the employment is construed to require that the injury be incurred because of a condition or risk created by the job. There must be a causal relation between the job and the injury.").

**HUBER ENGINEERED WOODS, LLC v. CANAL INS. CO.**

[203 N.C. App. 1 (2010)]

In fact, one of the cases cited by Defendant, *Garcia*, was the response of the Supreme Court of Florida to a certified question posed by the Eleventh Circuit. *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131 (11th Cir. Fla. 2006). The Eleventh Circuit, after struggling to determine the meaning of both "because of" and "acts or omissions," certified the following question to the Florida Supreme Court: "Is an insurance policy that defines a covered person as 'any other person with respect to liability because of acts or omissions' of the insured ambiguous?" *Id.* at 1136. Though the Florida Supreme Court ultimately held that the provision in *Garcia* was a vicarious liability provision under Florida law, the Eleventh Circuit clearly believed the language was reasonably susceptible to different interpretations, thus prompting certification of the question to the Florida Supreme Court. We find the term "because of" to be, at a minimum, ambiguous, and therefore interpret it in favor of coverage. *Waugh*, 188 A.2d at 891-92. Viewing the language "because of" "from the perspective of an average person, untrained in either the law or insurance[,]" we afford it its plain meaning, not the legal meaning of "proximate cause." *Blood Research*, 730 A.2d at 180.

We find *United States Fire Ins., supra,* instructive. *United States Fire Ins.* was decided under Illinois law, which, relevant to this appeal, is similar to Maine law. In *United States Fire Ins.*, Gateway, a subcontractor, obtained a general liability policy from USFI which covered the general contractor, Perini Building (the defendant), "but only with respect to acts or omissions of the named insured [Gateway] in connection with the named insured's operations at the applicable location designated." *United States Fire Ins.*, 684 N.E.2d at 958. Startz, an employee of Gateway, was injured while working for Gateway on a project (the Argonne project) run by the defendant. Startz brought action against the defendant based, in part, upon the defendant's negligence. Startz did not bring suit against his employer, Gateway. *Id.* at 958-59. The Court in *United States Fire Ins.* held:

> A comparison of the allegations in the complaint and the endorsement raises the potential for coverage and, in turn, a potential for coverage is all that is necessary to trigger USFI's duty to defend. When injured, Startz was an employee of Gateway (the named insured), was performing tasks required of him ("in connection with the named insured's operations"), and was working at the Argonne construction project ("at the applicable location designated"). Defendant['s] alleged liability to Startz potentially could have arisen from an act or omission on the part

**HUBER ENGINEERED WOODS, LLC v. CANAL INS. CO.**

[203 N.C. App. 1 (2010)]

of Gateway, whether or not the act or omission rises to the level of negligence. Such a possibility is sufficient to trigger the duty to defend on the part of Gateway's insurer (USFI) under the additional insured endorsement.

*Id.* at 963.

In the case before us, Nichols, working for W.M. in the course of W.M.'s regular business, was fatally injured on the job. Nichols' estate sued Plaintiff, claiming Plaintiff's negligence led to Nichols' death. Nichols' estate did not sue W.M. These facts are nearly identical to those present in *United States Fire Ins*. The *United States Fire Ins*. Court, applying law very similar to that of Maine, found no issue with the fact that Startz, the injured party, sued the defendant directly for the defendant's alleged negligence, and did not sue the named insured, Gateway, his employer. We hold that Plaintiff's alleged liability to Nichols' estate "potentially could have arisen from an act or omission on the part of [an insured under the policy], whether or not the act or omission [rose] to the level of negligence." *Id.* This possibility was "sufficient to trigger the duty to defend[.]" *Id.* This argument is without merit.

We disagree with the dissent's contention that our decision relies in any part on Plaintiff's affirmative defense of comparative negligence to Nichols' estate's claim against Plaintiff. As we have stated above, we hold that no showing of negligence on the part of Nichols was required to trigger Defendant's duty to defend. We clearly agree with the dissent that a "number of other courts have considered the arguments made by [P]laintiff in the instant case and found them to be without merit." We have cited such cases above without reservation. It is equally clear, however, that a number of other jurisdictions have considered the arguments made by Plaintiff and found merit therein. It is precisely this split in authority that augments our holding regarding the ambiguities inherent in the policy. Insurance companies can avoid the risks inherent in ambiguous policy language by drafting clearer language. As the drafter of the policy before us, only Defendant was in a position to more clearly indicate the limits of coverage under the policy.

[5] Defendant contends in its second argument that the trial court erred in finding Defendant had a duty to defend Plaintiff because the policy included an employee exclusion clause which barred coverage on the facts of this case. We disagree.

HUBER ENGINEERED WOODS, LLC v. CANAL INS. CO.

[203 N.C. App. 1 (2010)]

The policy included the following language:

**Exclusions**: This insurance does not apply:

. . . .

(c) to **bodily injury** to any employee of the **insured** arising out of and in the course of his employment by the **insured** or to any obligation of the **insured** to indemnify another because of damages arising out of such injury, but this exclusion does not apply to any such injury arising out of and in the course of domestic. employment by the **insured** unless benefits therefore are in whole or in part either payable or required to be provided under any workmen's compensation law[.]

We first note that the intent behind this provision appears to be to deny coverage for the employee in instances where the injured employee is eligible to collect workers' compensation benefits. Further, language used throughout the policy refers to "any insured," "an insured," "the named insured," "the designated insured," and "the insured."

[W]e hold that by excluding coverage for damages intentionally caused by "an insured person," Allstate unambiguously excluded coverage for damages intentionally caused by *any* insured person under the policy. "An" is an indefinite article routinely used in the sense of "any" in referring to more than one individual object.

*Johnson v. Allstate Ins. Co.*, 687 A.2d 642, 644 (Me. 1997). However,

provisions excluding from coverage injuries . . . caused by "the insured" refer to a definite, specific insured, who is directly involved in the occurrence that causes the injury. *Western Casualty & Surety Co. v. Aponaug Mfg. Co.*, 197 F.2d 673, 674 (5th Cir. 1952) (use of "the" insured would not affect coverage of other insureds); *Arsenon v. National Auto. and Casualty Ins. Co.*, 45 Cal. 2d 81, 286 P.2d 816, 818 (Cal. 1955) (use of "the" insured in exclusion clause did not preclude recovery of other insureds); *Pawtucket Mut. Ins. Co. v. Lebrecht*, 104 N.H. 465, 190 A.2d 420, 423 (N.H. 1963) (use of "the" and "an" insured in same policy indicates an intent to cover different situations; "the" insured refers to definite, specific insured who is seeking coverage); *Unigard Mut. Ins. Co. v. Argonaut Ins. Co.*, 20 Wash. App. 261, 579 P.2d 1015, 1019 (Wash. Ct. App. 1978) (coverage and exclusion defined in terms of "the" insured create separate oblig-

ations to several insureds). The "the insured" language in this policy differs from the "an insured" exclusion language present in other policies. Such "an insured" language in an exclusion clause is equated with "any insured" and means that the conduct of any insured that is excluded from coverage bars coverage for each insured under the policy. Such is not the case with [this] policy[.]

*Crocker*, 688 A.2d at 931; *see also Korhonen v. Allstate Ins. Co.*, 827 A.2d 833, 837-38 (Me. 2003). As the Supreme Judicial Court of Maine has determined that "the insured" refers only to the person or entity seeking coverage, we must apply that definition to the facts of this case. Plaintiff is the entity seeking coverage; therefore, the language referring to "the insured" in the exclusionary provision must refer to Plaintiff, and cannot refer to W.M. Nichols was employed by W.M., not Plaintiff. Therefore, because Nichols was not an employee of Plaintiff, by the express language of the exclusionary provision, the exclusionary provision does not apply on the facts before us.

We therefore affirm the trial court's ruling that Defendant has a duty to defend Plaintiff in the action brought against Plaintiff by Nichols' estate. The issue of indemnification should be addressed, if necessary, after the issue of Plaintiff's liability to Nichols' estate has been finally determined.

Affirmed in part, vacated in part.

Judge JACKSON concurs in the result with a separate opinion.

Judge STEELMAN concurs in part and dissents in part with a separate opinion.

JACKSON, Judge, concurring in the result.

I concur in the result reached by the majority; however, I write separately to express my concern with respect to the precedential effect of the majority's holding that "the term 'act or omission' is . . . reasonably susceptible to differing interpretations[,]" and is therefore "ambiguous." The phrase "act or omission" is commonplace in legal practice and legal writing, and to hold that the phrase, standing alone, is ambiguous may have regrettable consequences.

Black's Law Dictionary defines "act" as "[s]omething done or performed" or "[t]he process of doing or performing; an occurrence that results from a person's will being exerted on the external world[.]"

Black's Law Dictionary 27 (9th ed. 2009). Black's Law Dictionary defines "omission" as "[a] failure to do something" or "[t]he act of leaving something out." Black's Law Dictionary 1197 (9th ed. 2009).

Other jurisdictions previously have interpreted provisions in other insurance contracts similar to the provision at issue here. *See, e.g., Dillon Cos. Inc. v. Royal Indem. Co.*, 369 F. Supp. 2d 1277, 1287-88 (D. Kan. 2005); *Vulcan Materials Co. v. Casualty Ins. Co.*, 723 F. Supp. 1263, 1265 (N.D. Ill. 1989); *Maryland Cas. Co. v. Regis Ins. Co.*, 1997 WL 164268, 1997 U.S. Dist. LEXIS 4359 (E.D. Pa. Apr. 1, 1997); *Garcia v. Federal Ins. Co.*, 969 So. 2d 288 (Fla. 2007); *Transp. Ins. Co. v. George E. Failing Co.*, 691 S.W. 2d 71 (Tex. App. 1985). However, the fact that the underlying causes of action in those cases sounded in negligence does not render the term "act or omission" ambiguous by virtue of its being susceptible to differing interpretations, even though the phrase, standing alone, is broad enough to include causes of action other than negligence.

To the contrary, I believe that the phrase is clear and unambiguous. *Maryland Cas. Co.* correctly explained that

> [t]he plain or ordinary meaning of "act or omission" only requires the named insured to do or fail to do something. Negligence would require the named insured to do [or fail to do] something "which a reasonable [person] guided by those ordinary considerations which ordinarily regulate human affairs, would do [or would not do]."

*Maryland Cas. Co.*, 1997 WL 164268, at *5, 1997 U.S. Dist. LEXIS 4359, at *13-14 (citation omitted). The phrase "act or omission," is plain, but it is also broad and inclusive, and it therefore is applicable in various contexts—whether in a suit for negligence or for some other tort. The foregoing quotation from *Maryland Cas. Co.* simply illustrates that court's analysis of the "plain and ordinary meaning of 'act or omission' " with respect to the law of negligence, but the phrase is still clear and unambiguous, although it may be applied in other contexts.

I do not mean to imply that this Court should read any missing modifiers (*e.g.*, "negligent" act or omission; "intentional" act or omission) into an insurance policy. Rather, it is incumbent upon defendant, as the drafter of the insurance policy, to limit the scope of policy coverage if, and as, it desires to do so with obvious due regard for established public policy and constraints on unconscionability. As the majority explains, "Defendant 'enjoyed full contractual freedom

when it issued the policy. Had [Defendant] elected to [limit the coverage in the manner it now argues,] it could have effected its purpose with trifling effort.' " *See Farm Bureau Mut. Ins. Co. v. Waugh*, 188 A.2d 889, 892 (Me. 1963) (citation omitted). Here, however, defendant failed to modify "act or omission," and the plain meaning of the phrase is apparent, albeit broad.

Accordingly, I perceive a precedential danger in holding, without qualification, that the phrase "act or omission" is ambiguous, and I do not believe the phrase, standing alone, is ambiguous. However, because the plain meaning of the unmodified phrase "act or omission" contained within the policy already extends coverage to plaintiff without resorting to rules of construction attendant to a purported ambiguity, I join in the result reached in the majority as limited by this concurrence.

STEELMAN, Judge, concurring in part and dissenting in part.

I concur in the majority's conclusion that a substantial right is affected and that defendant's appeal of the trial court's interlocutory order is properly before this Court. I also concur in the majority's determination that the construction of the insurance policy is governed by Maine law.

It should be noted at the outset that this action is between Huber and Canal. W.M. Jr. Trucking, Inc. (W.M.) is not a party to this action. There is nothing in the record that suggests that Canal was aware of the Transportation Contract between Huber and W.M., and its terms are irrelevant to the issues presented in this case.

### Is Huber an "Insured" Under the Canal Policy?

Nichols was a driver for W.M. and died as a result of injuries received while picking up a load of plywood at Huber's Easton, Maine plant. W.M. had procured a liability insurance policy from Canal, which insured the vehicle being operated by Nichols. The Canal policy defines an "insured" as follows:

**III. PERSONS INSURED:** Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured;

(b) any partner or executive officer thereof, but with respect to a temporary substitute automobile only while such automobile is being used in the business of the named insured;

(c) any other person while using an owned automobile or a temporary substitute automobile with the permission of the named insured, provided his actual operation of (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be insured only if he is:

(1) a lessee or borrower of the automobile, or

(2) an employee of the named insured or of such lessee or borrower;

(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above.

Nichols' estate filed suit against Huber in the Superior Court of Aroostook County, Maine seeking damages for wrongful death based upon the negligence of Huber. Huber asserted as a defense the negligence of Nichols under Maine's comparative negligence statute. Me. Rev. Stat. Ann. Tit. 14, § 156. Based upon this assertion of the negligence of Nichols contributing to his injuries, Huber makes the creative argument that it is an insured under the Canal policy.

The majority has gone to great lengths to find ambiguities in the Canal policy and hold that Huber is an "insured." There are no ambiguities in the Canal policy, and the concept that the Canal policy provides any liability coverage to Huber is patently absurd.

Huber's argument is that Nichols is an "insured" under section III(c) of the policy as set forth above. Huber then argues that it is also an insured under section III(d) because it is facing liability because of "acts or omissions of an insured," i.e. Nichols. Huber does not face liability because of any acts of Nichols, but rather by virtue of allegations of *its own negligence* by the representatives of Nichols' estate. The majority distorts an affirmative defense, Maine Rules of Civil Procedure, Rule 8, which may or may not reduce the liability of Huber into a basis for finding coverage under an insurance policy.

The purpose of liability insurance is not to indemnify third parties who may injure or damage the policy holder or their agents and employees. Instead, "[l]iability insurance is a contract of indemnity for the benefit of the insured and those in privity with the insured, or those to whom the statute, upon the grounds of public policy, extends the indemnity against liability." 43 Am. Jur. 2d *Insurance* § 4 (2009).

. . . literalism should not be pushed to the length of frustrating, in whole or in part, the general intention the contract evidences; nor, on the other hand, should words be made to mean what they do not really say. A contract should be so construed as to give it only such effect as was intended when it was made. Astute and subtle distinctions should not be attempted, to take a plain case from the operation of material bounds.

*Johnson v. American Automobile Ins. Co.*, 161 A. 496, 498 (Me. 1932) (citing *Mack v. Rochester German Ins. Co.*, 13 N.E. 343 (N.Y. 1887), and *Lyman & others v. State Mutual Fire Insurance Company*, 96 Mass. (14 Allen) 329 (1867)); *see also Poisson v. Travelers Ins. Co.*, 31 A.2d 233, 235 (Me. 1943).

While I understand that this case involves the construction of a Maine insurance policy by a North Carolina Court, and will likely never be considered outside of the context of the present case, I believe that the ramifications of the majority's decision are significant. Under an insurance policy containing the same or similar language, a defendant in a lawsuit arising out of an automobile accident asserting contributory negligence on the part of the plaintiff could demand a defense, and possibly coverage from a plaintiff's insurance carrier. This is fundamentally inconsistent with the purpose of a party procuring liability insurance.

A number of other courts have considered the arguments made by plaintiff in the instant case and found them to be without merit. *Canal Ins. Co. v. Earnshaw*, 629 F. Supp. 114, 120 (D. Kan. 1985), *Vulcan Materials Co. v. Casualty Ins. Co.*, 723 F. Supp. 1263, 1264-65 (N.D. Ill. 1989), *Koch Asphalt Co. v. Farmers Ins. Group*, 867 F.2d 1164, 1166 (8th Cir. 1989), *Transport Ins. Co., Inc. v. Post Express Co., Inc.*, 1993 U.S. Dist. Lexis 5706 (N.D. Ill. 1993).

I would reverse the ruling of the trial court.

<u>Applicability of Exclusion for Injury to Employee</u>

I would also hold that the exclusion contained in section I(c) of the policy is applicable and bars any coverage to Huber.

The applicable provision states:

This insurance does not apply:

(c) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any

BOWLES AUTO., INC. v. N.C. DIV. OF MOTOR VEHICLES

[203 N.C. App. 19 (2010)]

obligation of the insured to indemnify another because of damages arising out of such injury;

. . .

The named insured under the policy was W.M. Nichols was an employee of W.M. Nichols was injured in the course of his employment with W.M. The exclusion is clear, is applicable to the facts of this case, and bars any coverage to Huber.

### Conclusion

I would reverse the ruling of the trial court that Canal's policy "provides defense and indemnity coverage to Huber for the claims asserted against Huber" in the Maine action filed by Nichols' estate. This matter should be remanded to the Superior Court of Mecklenburg County for entry of judgment dismissing this action, with prejudice.