Roth v. Penguin Toilets, LLC, 2011 NCBC 45.

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| CABARRUS COUNTY | SUPERIOR COURT DIVISION 11 CVS 478 |

ROBERT K. ROTH,

       Plaintiff,

v.

PENGUIN TOILETS, LLC,

       Defendant.

**ORDER & OPINION**

*Bishop, Capitano, & Moss, P.A. by Todd Capitano for Plaintiff Robert K. Roth.*

*Richard L. Robertson & Associates, P.A. by Adam M. Bridgers and Richard Robertson and Couzens, Lanksy, Fealk, Ellis, Roeder, & Lazar, P.C. by David A. Lawrence for Defendant Penguin Toilets, LLC.*

Murphy, Judge.

{1} **THIS MATTER** is before the Court upon Defendant's Motion to Dismiss in Lieu of Answer. Defendant alleges that Plaintiff's Complaint should be dismissed because Plaintiff's claims are subject to a forum selection clause incorporated from the Original Operating Agreement into the parties' Employment Agreement.

{2} After considering the Complaint, the Motion, briefs and submissions of the parties, and the arguments and contentions of counsel at the August 23, 2011 hearing, the Court **DENIES** Defendant's Motion to Dismiss.

## I.

## PROCEDURAL HISTORY

{3} Plaintiff Robert Roth filed his Complaint on February 9, 2011, in Cabarrus County, North Carolina. (Compl. p. 4.) On March 21, 2011, this matter

was transferred to the North Carolina Business Court as a mandatory complex business case, and subsequently assigned to me on March 24, 2011. (Assignment Order 1.)

{4}     On April 15, 2011, Defendant filed its Motion to Dismiss with supporting brief alleging that Plaintiff's Complaint should be dismissed because Plaintiff's claims are subject to choice of law and forum selection clauses that require litigation to be conducted in Wayne County, Michigan. (Def.'s Mt. to Dismiss 1-2.)

{5}     Plaintiff filed his Response in Opposition to Defendant's Motion to Dismiss on May 23, 2011, to which Defendant replied on June 9, 2011. (Pl.'s Resp. to Mt. to Dismiss 11; Def.'s Reply in Supp. of Mt. to Dismiss 11.)

{6}     This Court held a hearing on Defendant's Motion to Dismiss on August 23, 2011.

## II.

## FINDINGS OF FACT

{7}     Plaintiff is a citizen and resident of Cabarrus County, North Carolina. (Compl. ¶ 1.)

{8}     Defendant is a Michigan limited liability company that regularly transacts business in North Carolina. (Compl. ¶ 2.)

{9}     On July 15, 2010, the parties entered into an Employment Agreement wherein Defendant employed Plaintiff as Penguin's CEO and President and Plaintiff became a member/director of the LLC. (Emp't Agreement p. 1.) Per the terms of the Employment Agreement, Plaintiff acquired a four percent (4%) interest in Defendant's profits, losses, and cash distributions. (*Id.*) The Employment Agreement contains the terms and conditions governing Plaintiff's employment with Defendant. (Compl. ¶ 5.)

{10}    The Employment Agreement "require[d] the Parties to apply Michigan law to its interpretation and enforcement," but did not include a forum or venue selection clause. (Emp't Agreement, Sec. XIV, p. 6.) The Employment Agreement also makes reference to Defendant's then-existing Operating Agreement ("Original

O.A.M."). Plaintiff was not a signatory to the Original O.A.M., or a member of Penguin Toilets, LLC when the Original O.A.M. was entered into in July 2008. The Employment Agreement contained the following language: "[i]f, and to the extent, any term of this [Employment] Agreement conflicts with the [Original O.A.M.], . . . then this Agreement will supersede the conflicting term, to the extent of such conflict. (*Id.* at p. 1.) The Employment Agreement immediately went on to recite: "[i]n deference to the foregoing sentence, each Member has signed this Agreement to (and only to) effectively amend the [Original O.A.M.] to hereby revise, as so required, all conflicting terms of the [Original O.A.M.]." (*Id.*) The only other relevant reference to the Original O.A.M. within the Employment Agreement provides that "[t]his [Employment] Agreement . . . (c) recites, along with the [Original O.A.M.] and Penguin's articles of organization, each term governing [Plaintiff's] relationship with Penguin." (Emp't Agreement Sec. XIV(c), p. 6.)

{11}  After the parties entered into the Employment Agreement, an Amended Operating Agreement ("Current Operating Agreement") was executed on September 17, 2010. (Current Operating Agreement A-1, A-25.) Plaintiff signed the Current Operating Agreement as a member of Penguin Toilets, LLC. The Current Operating Agreement included an integration clause which provided as follows: "[t]his Operating Agreement constitutes the entire agreement between the parties and contains all of the agreement between the parties with respect to its subject matter." (*Id.* at A-23.)

{12}  The Current Operating Agreement's subject matter includes articles dealing with company organization; capital contributions, membership shares and capital accounts; administration; tax allocations; distributions; management; membership; liability and indemnification; transfer of shares; intellectual property; dissolution; and other miscellaneous provisions. (*See Id.*)

{13}  The Current Operating Agreement's article on management contains a provision that the company will be managed under the authority of a Board of Directors ("BOD"), and that the BOD "shall appoint a CEO and such other officers and managers as the Board may determine. The *term, powers, duties and*

*compensation of the CEO* (see schedule "A", the Robert Kevin Roth employment agreement dated July 15th 2010 attached) *and such other managers shall be determined by the [BOD]*." (*Id.* at A-9) (emphasis added).

{14}  The Current Operating Agreement, like the Original O.A.M., also includes a section titled "Governing Law and Venue," (*Id.* at A-24; Original O.A.M. 21.) that provides:

> This Operating Agreement is being executed and delivered in the State of Michigan and shall be governed by, construed, and enforced in accordance with the laws of the State of Michigan. Any dispute or other legal action concerning this Agreement, including any arbitration or litigation proceedings *shall be conducted in Wayne County, Michigan* unless the Arbitrators identify a more suitable and agreeable venue and the Members consent to the jurisdiction and venue of any State or Federal Court located therein.

(*Id.*) (emphasis added).

## III.

## LEGAL STANDARD

{15}  In both North Carolina and Michigan "'where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect.'" *Szymczyk v. Signs Now Corp.*, 168 N.C. App. 182, 186, 606 S.E.2d 728, 732 (2005) (quoting *Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980)); *see also Turcheck v. Amerifund Fin., Inc.*, 272 Mich. App. 341, 345 (2006) (stating "[i]t is undisputed that Michigan's public policy favors the enforcement of contractual forum-selection clauses and choice-of-law provisions.").

{16}  In North Carolina, the proper procedure by which to seek enforcement of a contractual forum or venue selection clause is a motion to dismiss for improper venue pursuant to Rule 12(b)(3). *See Hickox v. R&G Group Int'l, Inc.*, 161 N.C. App. 510, 511, 588 S.E.2d 566, 567 (2003); *see also Mark Group Int'l, Inc. v. Still*, 151 N.C. App. 565, 566 n.1, 566 S.E.2d 160, 161 n.1 (2002).

{17}  Upon a motion made pursuant to Rule 12(b)(3), North Carolina courts will generally enforce a contractual forum selection clause if that clause is

mandatory. *Id.*, 151 N.C. App. at 568, 566 S.E.2d at 162. "[M]andatory forum selection clauses recognized by our appellate courts have contained words such as 'exclusive' or 'sole' or 'only' which indicate that the contracting parties intended to make jurisdiction exclusive." *Id.* However, "[t]he weight of authority indicates that the mere use of the word 'shall' does not make [a] forum selection clause 'exclusive.'" *Akima Corp. v. Satellite Servs.*, No. COA06-112, 2006 N.C. App. LEXIS 2462, *7 (2006). It is not an abuse of discretion by a trial court to deny a motion to dismiss for improper venue where the jurisdictional clause is not mandatory. *Mark Group Int'l, Inc.*, 151 N.C. App. at 568, 566 S.E.2d at 162.

{18}     "When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning." *Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973); *see also Davison v. Duke Univ.*, 282 N.C. 676, 712, 194 S.E.2d 761, 783 (1973) (stating "[t]he interpretation of a contract, will or trust indenture involves the finding of intention. Such interpretation has always been recognized as being in the province of the court rather than the jury. Hence, it has uniformly been treated as a question of law subject to review by the appellate courts.").

{19}     However, "[w]hen an agreement is ambiguous and the intention of the parties is unclear, interpretation of the contract is for the jury." *Int'l Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 317, 385 S.E.2d 553, 556 (1989) (citing *Silver v. Board of Transp.*, 47 N.C. App. 261, 267 S.E.2d 49 (1980)); *see also Schenkel & Shultz, Inc. v. Herman F. Fox*, 362 N.C. 269, 275, 658 S.E.2d 918, 922-23 (2008) (stating that when an ambiguity is present as to the intended scope of a reference to another document, "[i]t is for the jury to determine whether a particular agreement was or was not part of the contract actually made by the parties.").

{20}     Generally, "'[w]hen the language of a written contract is plain and unambiguous, the contract must be interpreted as written and the parties are

bound by its terms.'" *Graphic Packaging Int'l v. Gilbertson*, No. COA09-1372, 2010 N.C. App. LEXIS 1466 at *10 (2010) (quoting *Atlantic & E. Carolina Ry. Co. v. Wheatley Oil Co.*, 163 N.C. App. 748, 752, 594 S.E.2d 425, 429 (2004)). "'An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations.'" *Id.* at *11 (quoting *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs.*, 362 N.C. 269, 273, 658 S.E.2d 918, 922 (2008)). "Thus, if there is uncertainty as to what the agreement is between the parties, a contract is ambiguous." *Id.* "'Whether or not a contractual term is ambiguous is a question of law.'" *Id.* (quoting *Huber Engineered Woods, LLC v. Canal Ins. Co.*, 203 N.C. App. 1, 8, 690 S.E.2d 739, 745 (2010)).

## IV

## ANALYSIS

### A. Contract Ambiguity

{21} In order for this Court to find as a matter of law that there is an enforceable forum selection clause, it must, as a threshold issue, determine whether the relevant documents in this case are unambiguous regarding this issue. *Lane v. Scarborough*, 284 N.C. at 410, 200 S.E.2d at 624. Here, Defendant argues throughout its Brief in Support that the forum selection clauses are "unambiguous," and that the Employment Agreement's references to the Original O.A.M. were intended to eliminate any "ambiguity regarding the intent of the reference[.]" (Def.'s Br. in Supp. of Mt. to Dismiss 4.) After reviewing the Original O.A.M., Current Operating Agreement, and Employment Agreement this Court agrees with Defendant that the forum provisions within the Original O.A.M. and Current Operating Agreement are clear. In addition, the Employment Agreement's reference to the Original O.A.M., and the Current Operating Agreements reference to the Employment Agreement are equally certain. Accordingly, there is no uncertainty as to what the parties agreed to, and the terms of the relevant documents are insusceptible to alternative interpretations. Therefore, this Court finds as a matter of law that the terms of the Original O.A.M., Current Operating Agreement, and Employment Agreement that impact this Court's determination of the issue before

it are unambiguous. *Huber Engineered Woods, LLC v. Canal Ins. Co.*, 203 N.C. App. at 8, 690 S.E.2d at 745.

## B. Incorporation by Reference

{22}     Because the Original O.A.M., Current Operating Agreement, and Employment Agreement in this case are unambiguous, their interpretation is a question of law for the Court. *Lane v. Scarborough*, 284 N.C. at 410, 200 S.E.2d at 624. Here, the Employment Agreement included a Michigan choice of law provision but no forum selection clause. (Emp't Agreement Sec. XIV, p. 6.) The only documents that included a forum selection clause were the two iterations of Defendant's Operating Agreements. (*See*, Original O.A.M. p. 21; *see also* Current Operating Agreement A-24.) Plaintiff, however, was never a signatory to the Original O.A.M. and, therefore, was not bound by it. While Defendant argues that the terms of the Original O.A.M. were incorporated by reference into the Employment Agreement, the clear language of the Employment Agreement leads the Court to conclude otherwise.

{23}     The Miscellaneous section of the Employment Agreement contains the following language: "[t]his Agreement . . . recites, along with the [Original O.A.M.] and Penguin's articles of organization, each term governing [Plaintiff's] relationship with Penguin . . . ." (Emp't Agreement Sec. XIV, p. 6.) The Court does not construe this to mean, as Defendant argues, that the provisions in each of those documents were incorporated into each of the other documents. Rather, that to the extent Plaintiff held a relationship covered by one of the enumerated agreements, the terms of that particular document would govern that particular relationship.

{24}     At the time the Employment Agreement was entered into, there were at least two relationships created between Plaintiff and Defendant – the first as an employee (CEO-President) of Defendant, and the second, as a member/director of Penguin Toilets, LLC. (*Id.* at Sec. II, p. 1.) Accordingly, the Original O.A.M. controls the terms of Plaintiff's relationship as a member/director of Defendant, at least through September 17, 2010 when the parties mutually executed and entered into the Current Operating Agreement, and the Employment Agreement controls

the terms of Plaintiff's relationship as an employee. This interpretation is supported by a separate provision within the Employment Agreement which continues Plaintiff's relationship as an owner/director ". . . *according to the* [*Original O.A.M.*], even after the term of this [Employment] Agreement." (*Id.* at Sec. II(e), p. 1.) (emphasis added). The Court's determination that the Employment Agreement contains the terms of Plaintiff's employment relationship with Defendant is not to say that a particular relationship can only be controlled by one document. Instead, the Court merely concludes that the Employment Agreement's language referencing the Original O.A.M. and Articles of Incorporation did not adequately incorporate the terms of those documents, either expressly or by reference, into the Employment Agreement. The action before this Court concerns Plaintiff's relationship as an employee of Defendant. Accordingly, the Employment Agreement provides the relevant contractual obligations of the parties.

{25} The Employment Agreement reflects the complex relationship between the parties and takes into account that conflicts between/among the relevant documents might arise. The Employment Agreement provides in the first paragraph that "[i]f, . . . any term of this [Employment] Agreement conflicts with the [Original O.A.M.], . . . then this [Employment] Agreement will supersede the conflicting term, to the extent of such conflict. (Emp't Agreement p. 1.) To prevent potential conflicts, the Employment Agreement went on to provide that "[i]n deference to the foregoing sentence, each Member has signed this [Employment] Agreement to (and only to) effectively amend the [Original O.A.M.] to hereby revise, as so required, all conflicting terms of the [Original O.A.M.]." (*Id.*) The signature page of the Employment Agreement confirms that the Members were signing the Employment Agreement "solely to amend the [Original O.A.M.] per the initial paragraph hereof." (*Id.* at 7.)

{26} If, as Defendant argues, the terms of the Operating Agreement were incorporated by reference, there would have been no need to include language in the Employment Agreement addressing the problem of conflicting terms within the Operating Agreement; the Operating Agreement's terms would have been included

within the Employment Agreement. The presence of the superseding clause suggests to the Court that the parties did not intend to incorporate the Operating Agreement's terms into the Employment Agreement. Instead, the Employment Agreement was intended to control the terms of Plaintiff's employment relationship with Defendant, and any inconsistent terms within the Operating Agreement were to have no effect on that relationship.

{27} Lastly, Defendant has argued that the Current Operating Agreement's reference to the Employment Agreement effectively incorporated the Employment Agreement into the subject matter of the Current Operating Agreement, and as a result, makes any dispute under the Employment Agreement subject to the Current Operating Agreement's forum selection clause. (Def.'s Br. in Supp. of Mt. to Dismiss 5-6.) This contention is unsupported by the language of the Current Operating Agreement. As noted above, the Current Operating Agreement provides that the BOD "shall appoint a CEO and such other officers and managers as the Board may determine. The term, powers, duties and compensation of the CEO (see schedule "A", the Robert Kevin Roth employment agreement dated July 15th 2010 attached) and such other managers shall be determined by the [BOD]." (*Id.* at A-9.) This language gives the BOD the authority to appoint a CEO and other managers they deem appropriate for the proper management of the LLC; it also allows the BOD to determine the length of their employment, duties, and compensation. The reference to the Employment Agreement only serves to illustrate how the BOD may exercise its powers and authority over management matters and does not make the Employment Agreement the "subject matter" of the Current Operating Agreement. Accordingly, the Current Operating Agreement's forum selection clause is not binding in disputes over Plaintiff's employment.

{28} The absence of a forum selection clause within the Employment Agreement, lack of intent between the parties to incorporate the Operating Agreement's terms into the Employment Agreement, and failure of the Current Operating Agreement to incorporate the Employment Agreement into its subject matter, directs the Court's conclusion that there is no binding forum selection

clause controlling Plaintiff employment, and therefore Plaintiff was not limited to bringing his action in Michigan.

## C. Non-Mandatory Forum Selection Clause

{29} Even if this Court found the Original O.A.M. and/or Current Operating Agreement's forum selection clause was integrated into the Employment Agreement, Plaintiff would still be able to bring this action in North Carolina because the forum selection clause is not mandatory. As noted above, North Carolina courts will enforce a contractual forum selection clause if that clause is mandatory. *Mark Group Int'l, Inc.*, 151 N.C. App. at 568, 566 S.E.2d at 162.

{30} Here, the forum selection clause provides that "[a]ny dispute or other legal action concerning this Agreement, including any arbitration or litigation proceedings shall be conducted in Wayne County, Michigan unless the Arbitrators identify a more suitable and agreeable venue and the Members consent to the Jurisdiction and venue of any State or Federal Court located therein." (Current Operating Agreement A-24.) While the word "shall" indicates that the proceedings are to be conducted in Wayne County, Michigan, it does not say that this is the only venue where proceedings may be conducted. North Carolina courts have found that mandatory selection clauses include words "such as 'exclusive' or 'sole' or 'only' which indicate[] that the contracting parties intended to make jurisdiction exclusive." *Mark Group Int'l, Inc.*, 151 N.C. App. at 568, 566 S.E.2d at 162.

{31} In a case similar to the one before this Court, the North Carolina Court of Appeals was presented with a forum selection clause which recited that "any dispute arising from or relating to this Agreement *shall* be subject to adjudication by a court of competent jurisdiction in the State of Michigan unless otherwise agreed upon by the [p]arties." *Akima Corp.*, No. COA06-112, 2006 N.C. App. LEXIS 2462, at *7 (applying Michigan law) (emphasis added). The court held that "[identical] language . . . ha[d] been found *not* to be exclusive," *Id.* at *8; *see also Mark Group*, 151 N.C. App. at 568, 566 S.E.2d at 162 (finding as non-exclusive a forum selection clause that stated the contract "shall be subject to the jurisdiction of the State of Colorado . . .") (emphasis added). The court went on to find that the use

of the word "shall" did not make the clause mandatory, and thus the action could be brought in jurisdictions other than Michigan. *Akima Corp.*, No. COA06-112, 2006 N.C. App. LEXIS 2462, at *10.

{32}    The forum selection clause in this case suffers from the same infirmity as the clause in *Akima* because it fails to use mandatory language. Like the clause in *Akima*, the clause here simply says that "proceedings shall be conducted in Wayne County, Michigan." (Current Operating Agreement A-24.) This, however, does not mean that Wayne County, Michigan is the only place where an action may be brought. Accordingly, even if the Court found the forum selection clause in the Original O.A.M. and/or Current Operating Agreement had been incorporated into the Employment Agreement, it would not necessarily follow that adjudication in North Carolina is improper.

## IV.
## CONCLUSION

{33}    Absent a forum selection clause within the Employment Agreement, or an effective incorporation of either operating agreements' forum selection clause into the Employment Agreement, the Employment Agreement does not contain a choice of forum provision limiting the location where Plaintiff may bring this action. Even if the provision had been incorporated, it is not mandatory. Thus, Plaintiff may properly bring and prosecute his action in this jurisdiction, and North Carolina is an appropriate forum.

{34}    For the reasons noted above, it is hereby **ORDERED** that Defendant's Motion to Dismiss is **DENIED**.

This 30th day of November, 2011.