In Re PokerTek Merger Litig., 2015 NCBC 8.

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
                                 SUPERIOR COURT DIVISION
MECKLENBURG COUNTY               14 CVS 10579 (Master File);
                                      14 CVS 8300;
                                      14 CVS 8911;
                                      14 CVS 9215;
                                      14 CVS 9271

| | |
|---|---|
| In re PokerTek Merger Litigation | **ORDER AND FINAL JUDGMENT** |

{1}     **THIS MATTER** is before the Court on Plaintiffs' Motion for Final Approval of Settlement ("Approval Motion") and Plaintiffs' Motion for Award of Attorneys' Fees and Expenses, each filed with supporting briefs on December 23, 2014, and arising from a settlement stipulation conditionally entered on or about September 19, 2014, and subsequently finalized subject to Court approval (the "Settlement"), implementing an earlier tentative settlement subject to confirmatory discovery.   Appropriate notice to potential class members following the Court's preliminary approval of the Settlement was sent, and no objection to the Settlement has been made.   The Court held a final fairness hearing at which it examined Plaintiffs' counsel, and the Court is satisfied as to the fairness, reasonableness, and adequacy of the Settlement and the fairness and reasonableness of the fees and costs requested.   The Court now **GRANTS** each of the Motions, **CERTIFIES** the class as defined below for purposes of the Settlement only, **APPROVES** the Settlement, **AWARDS** the requested attorneys' fees and costs, and **ENTERS FINAL JUDGMENT** for the reasons indicated below.

> *Wallace & Graham, P.A. by John Hughes and Mona Lisa Wallace, and Levi & Korsinky LLP by Donald J. Enright and Elizabeth K. Tripodi, for Plaintiff Arkady Sandler.*

> *The Rabon Law Firm, PLLC by Gary W. Jackson, Brodsky & Smith, LLC by Evan J. Smith and Marc Akerman, Rigrodsky & Long, P.A. by Seth Rigrodsky, Brian D. Long and Gina Serra, The Rosen Law Firm, P.A. by Phillip Kim, and The Briscoe Law Firm by Willie C. Briscoe, for Plaintiffs Robert Simmer, Jeffrey Weber, James Dabord, Herald Stephens and Luis Lobo.*

*McGuire Woods LLP by Irving M. Brenner for Defendants Joseph J. Lahti, Lyle A. Berman, Gehrig H. White, Arthur L. Lomax, James T. Crawford, III and PokerTek, Inc.*

*Wyrick Robbins Yates & Ponton, LLP by Charles George and Lee M. Whitman, Cadwalader, Wickersham & Taft LLP by Gregory A. Markel, and Morse Zelnick Rose & Lander, LLP by Kenneth S. Rose for Defendants Multimedia Games, Inc. and 23 Acquisition Co.*

Bledsoe, Judge.

## I.     NATURE OF THE DISPUTE

{2}     Plaintiffs Robert Simmer ("Simmer"), Jeffrey Weber ("Weber"), James Dabord ("Dabord"), Herald J. Stephens ("Stephens"), Luis Lobo ("Lobo") and Arkady Sandler ("Sandler") are former shareholders of Defendant PokerTek, Inc. ("PokerTek").

{3}     On April 29, 2014, PokerTek entered into a definitive Merger Agreement with Defendant 23 Acquisition Co. ("Merger Sub"), a North Carolina corporation and a wholly owned subsidiary of Multimedia Games, Inc. ("Multimedia").  Merger Sub was formed solely to facilitate the merger with PokerTek.

{4}     PokerTek announced the Merger Agreement on April 30, 2014. The Merger Agreement grew out of a process that had begun in early January 2011, continued throughout the next three years, and ultimately involved discussions with fourteen separate parties concerning a possible business combination transaction. After engaging in preliminary discussions with a number of parties and retaining Northeast Securities, Inc. ("Northeast") as its financial advisor in May 2012 and again in May 2013, PokerTek ultimately engaged Burrill Securities, LLC ("Burrill") as its financial advisor on April 9, 2014.  The closing price per share of PokerTek Common Stock on the Nasdaq Capital Market was $0.98 at the time the Merger Agreement was executed on April 29, 2014.  The Merger Agreement provided for a share purchase value of $1.35, yielding an overall merger valuation of $12.6 million.

{5}     Simmer was the first to file a Complaint challenging the merger on May 9, 2014.  Shortly thereafter, Weber and Dabord filed a Complaint on May 15, 2014,[1]

---

[1] Weber and Dabord subsequently filed an Amended Complaint on June 6, 2014.

Stephens filed a Complaint on May 16, 2014, and Lobo filed a Complaint on May 19, 2014. In addition to the corporate Defendants, the actions were brought against the individual members of PokerTek's Board of Directors.[2] Each Complaint alleged that the individual Defendants had breached their fiduciary duties, including by their alleged breaches of the duties of care, good faith, loyalty, and candor; failures to disclose material information; self-dealing; failure to secure adequate merger consideration; and agreeing to unreasonable deal-protection measures. Each Complaint further alleged that the corporate Defendants aided and abetted the individual Defendants' alleged breach of their fiduciary duties.

{6}     PokerTek filed its Preliminary Proxy Statement on May 23, 2014.

{7}     Sandler filed a Verified Class Action and Shareholder Derivative Complaint against the same Defendants on June 9, 2014. Sandler's Complaint contained direct and derivative claims against the individual Defendants for breach of fiduciary duty and against the corporate Defendants for aiding and abetting that alleged breach. Sandler's Complaint placed greater emphasis on the individual Defendants' alleged failures to disclose material information than did the earlier-filed Complaints. In particular, Sandler contended that PokerTek had failed to disclose certain financial projections PokerTek provided to Burrill for the 2014 – 2019 time period, the contents of the confidentiality agreements PokerTek entered with eight potential bidders for the company (including whether standstill provisions barring superior offers were negotiated with these parties), the terms and circumstances concerning the retention of PokerTek's financial advisors (first Northeast and then Burrill), and certain information underlying Burrill's various financial analyses supporting its fairness opinion.

---

[2] Plaintiff Stephens also included Mark D. Roberson, PokerTek's Chief Executive Officer, as a defendant in his Complaint.

{8}     Each of the five actions was designated as a mandatory complex business case, assigned to this Court (Murphy, J.), and subsequently reassigned to the undersigned on July 2, 2014.[3]

{9}     The Court consolidated the five actions on July 8, 2014, (the "Consolidated Action"), and on July 21, 2014, appointed Plaintiffs' lead counsel and liaison counsel, each having extensive, well-documented experience and success in this type of litigation.

{10}     The claims in the Sandler Verified Complaint were asserted on behalf of a purported class of PokerTek common stockholders as of April 29, 2014, exclusive of persons or entities closely associated with Defendants. The Sandler Verified Complaint alternatively alleged direct and derivative claims. Plaintiffs did not make a demand upon PokerTek before bringing their initial actions but instead claimed that the Verified Complaint was an adequate demand, and asserted that making a demand upon PokerTek after the initiation of litigation satisfied any statutory demand requirement.

{11}     PokerTek filed its Final Proxy Statement on June 19, 2014.

{12}     The parties negotiated an expedited discovery process. Plaintiffs thereafter engaged in expedited document review with Defendants' consent, reviewing some 3,100 pages of confidential documents of PokerTek, and, on July 11, 2014, filed a Motion for Preliminary Injunction to enjoin the merger, which was scheduled for a shareholder vote on July 24, 2014.

{13}     On July 13, 2014, the parties entered a Memorandum of Understanding ("MOU"), resolving all claims, subject to confirmatory discovery. The Settlement focused on Plaintiffs' disclosure-based claims. Pursuant to the MOU, PokerTek made supplemental disclosures by filing a Form 8-K on July 14, 2014.

---

[3] On July 10, 2014, a substantially similar shareholder action was filed against Defendants in the United States District Court for the Western District of North Carolina, captioned *Clark v. PokerTek, Inc.*, Case No. 3:14 cv 00380 (W.D.N.C.), alleging breaches of fiduciary duty, aiding and abetting such breaches, and violations of federal securities law relating to the merger. This action was voluntarily dismissed without prejudice on December 9, 2014.

{14}    The shareholder vote was held as scheduled on July 24, 2014, at which 6,304,156 shares voted in favor of the merger, 264,471 shares voted against, and 1,600 shares abstained.

{15}    Plaintiffs conducted confirmatory discovery in accordance with the provisions of the MOU, which included the depositions of Defendant Lahti (PokerTek's board chair and lead independent director) and a designee of Burrill.

{16}    The parties executed a Stipulation and Agreement of Compromise, Settlement and Release ("Stipulation") on September 19, 2014.  Plaintiffs then submitted the Stipulation with their Unopposed Motion for Preliminary Approval of the Settlement on September 22, 2014.

{17}    The merger transaction was consummated on October 1, 2014, and PokerTek was merged out of existence that day.

{18}    The Court issued its Preliminary Approval Order on October 6, 2014, preliminarily certifying the Settlement Class, directing that notice be given, and setting a Settlement Hearing for December 4, 2014.

{19}    On November 7, 2014, the Court granted Defendants' Unopposed Motion to Amend the Preliminary Approval Order with Respect to the Time for Provision of Notice and Resetting the Settlement Hearing Date and issued an Amended Preliminary Approval Order extending the period for giving notice and rescheduling the Settlement Hearing for January 13, 2015.

{20}    PokerTek engaged Kurtzman Carson Consultants, LLC ("KCC") as an agent to undertake the mailing of notice of the Settlement as directed by the Court. As of January 7, 2015, KCC had mailed 2,088 notices to at least 1,215 recipients.

{21}    The Court held the Settlement Hearing on January 13, 2015.  Neither the Court, the parties, nor KCC received any objection to the Settlement, either before, during, or after the fairness hearing.

## II.    CLASS CERTIFICATION

{22}    As Judge Gale has recently observed, "this Court has broad discretion in determining whether a case should continue as a class action." *In re Harris Teeter Merger Litig.*, 2014 NCBC 44 ¶ 23 (N.C. Super. Ct. Sept. 24, 2014),

www.ncbusinesscourt.net/opinions/2014_NCBC_44.pdf (approving final settlement); *Harrison v. Wal-Mart Stores, Inc.*, 170 N.C. App. 545, 547, 613 S.E.2d 322, 325 (2005) (citing *Faulkenbury v. Teachers' and State Employees' Ret. Sys. of N.C.*, 345 N.C. 683, 699, 483 S.E.2d 422, 432 (1997)). Class certification is controlled by North Carolina Rule of Civil Procedure 23, and our courts have provided that a trial court, in its discretion, may certify a class action where the following requirements are met:

> "(1) the existence of a class, (2) . . . the named representative will fairly and adequately represent the interests of all class members, (3) . . . there is no conflict of interest between the representative and class members, (4) . . . class members outside the jurisdiction will be adequately represented, (5) . . . the named party has a genuine personal interest in the outcome of the litigation, (6) . . . class members are so numerous that it is impractical to bring them all before the court, (7) . . . adequate notice of the class action is given to class members."

*Ehrenhaus v. Baker*, Order, No. 08 CVS 22632 ¶ 39 (N.C. Super. Ct. Feb. 5, 2010), (approving settlement) (alterations in original) (quoting *Perry v. Union Camp Corp.*, 100 N.C. App. 168, 170, 394 S.E.2d 681, 682 (1990) (summarizing the factors set forth in *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 282–84, 354 S.E.2d 459, 465–66 (1987))).

{23} The North Carolina Supreme Court has held that "a 'class' exists . . . when the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members." *Crow*, 319 N.C. at 280, 354 S.E.2d at 464.

{24} Here, the Court concludes that the class representatives' claims are typical of claims of the putative class, are common to all former PokerTek shareholders, and predominate over any potential individual claim, thereby satisfying the requirements for the existence of a class. *See id.*

{25} The Court further finds that the named class representatives fairly and adequately represented the interests of all class members and were each shareholders without any conflict with other members of the putative class. The Court also concludes that class members outside the jurisdiction were adequately represented, and that the named class representatives had a clear stake and genuine

personal interest, not a mere technical interest, in the controversy, also satisfying requirements established by *Crow*. *Id.* at 282–83; 354 S.E.2d at 465.

{26}    The Court finds that the class here consists of thousands of shareholders of PokerTek such that it is impractical to bring them all before the Court, easily meeting the numerosity requirement. *Id.* at 283, 354 S.E.2d at 466 (citing N.C. R. Civ. P. 23(a)).

{27}    The Court also finds that all class members were given fair and adequate notice, thereby satisfying the notice requirements for class certification. *Id.* at 283–84, 354 S.E.2d 466.

{28}    Because all class action prerequisites have been met, the Court, as Judge Gale has explained, "has the discretion to then determine whether a class action is superior to other methods for adjudication of this controversy." *In re Harris Teeter Merger Litig.*, 2014 NCBC 44 at ¶ 28; *Blitz v. Agean*, 743 S.E.2d 247, 249 (N.C. Ct. App. 2013).

{29}    Plaintiffs here ask the Court to certify a "non-opt-out" class. "By opting out, the class member avoids the preclusive effect of the settlement." *Ehrenhaus v. Baker*, 216 N.C. App. 59, 78, 717 S.E.2d 9, 23 (2011).

{30}    The Business Court has previously certified non-opt-out classes in merger disputes. *See, e.g., In re Harris Teeter Merger Litig.*, 2014 NCBC 44; *In re PPDI Litig.*, 2012 NCBC 31 ¶¶ 3–4 (N.C. Super. Ct. May 24, 2012), www.ncbusinesscourt.net/opinions/2012_NCBC_31.pdf; *In re Progress Energy S'holder Litig.*, 2011 NCBC 45 (2011), www.ncbusinesscourt.net/opinions/2011_NCBC_44.pdf; *Ehrenhaus v. Baker,* No. 08 CVS 22632 (N.C. Super. Ct. Feb. 5, 2010); *In re Quintiles Transnat'l Corp. S'holder Litig.*, No. 02 CVS 5348 (N.C. Super. Ct. Oct. 10, 2003); *In re Delhaize Am., Inc. S'holder Litig.*, No. 00 CVS 13706 (N.C. Super. Ct. Oct. 29, 2001). These cases are consistent with the views of courts from other jurisdictions that have certified non-opt-out classes where primarily equitable relief was sought. *See, e.g., In re Philadelphia Stock Exch., Inc.*, 945 A.2d 1123, 1137 (Del. 2008).

{31} The Court concludes that certifying a non-opt-out class in this action, which seeks injunctive relief, is the superior means of resolving the claims in this action, particularly because it will serve "'to avoid unnecessary inconsistencies and compromises in future litigation.'" *Ehrenhaus*, 216 N.C. App. at 79, 717 S.E.2d at 23 (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995)). Indeed, this is not a case where the parties "seek[] to bind class members concerning claims wholly or predominantly for money judgments." *Id.* Instead, from the outset, Plaintiffs pled and litigated this case as one in which equitable claims predominated (seeking to enjoin the PokerTek-Multimedia Merger). *See generally In re Harris Teeter Merger Litig.*, 2014 NCBC 44; *In re PPDI Litig.*, 2012 NCBC 31 ¶¶ 3–4 (N.C. Super. Ct. May 24, 2012); *In re Progress Energy S'holder Litig.*, 2011 NCBC 44; *Ehrenhaus*, No. 08 CVS 22632 at ¶ 77; *In re Quintiles Transnational Corp. S'holder Litig.*, No. 02 CVS 5348.

{32} Accordingly, the Court certifies the following non-opt-out Settlement Class solely for the purpose of effectuating the Settlement:

> Any and all record and beneficial holders or owners of PokerTek common stock and their respective successors, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate or remote, and any person or entity acting for or on behalf of, or claiming under any of them, together with their predecessors and successors and assigns, who beneficially owned PokerTek common stock as of April 29, 2014 or between that date and the date of consummation of the Proposed Transaction, but excluding: (i) the Defendants; (ii) the immediate families of the PokerTek Board; (iii) any parent, subsidiary, affiliate, officer, or director of PokerTek; (iv) any entity in which any excluded person has a controlling interest; and (v) the legal representatives, heirs, successors and assigns of any excluded person.

## III. THE SETTLEMENT

{33} "Settlement has long been preferred to litigation, and public policy prefers upholding good faith settlements, even without strong regard to the consideration underlying the settlement." *In re Progress Energy S'holder Litig.*, 2011 NCBC 44 at ¶ 34; *see generally In re Harris Teeter Merger Litig.*, 2014 NCBC 44;

*Ehrenhaus*, 216 N.C. App. at 72, 717 S.E.2d at 19 (citing *Knight Publ'g Co. v. Chase Manhattan Bank, N.A.*, 131 N.C. App. 257, 262, 506 S.E.2d 728, 731 (1988)).

{34}   Courts commonly utilize the following factors when determining the fairness, reasonableness, and adequacy of a proposed class action settlement: (a) the strength of the plaintiff's case, (b) the defendant's ability to pay, (c) the complexity and cost of further litigation, (d) the amount of opposition to the settlement, (e) class members' reaction to the proposed settlement, (f) counsel's opinion, and (g) the stage of the proceedings and how much discovery has been completed. *See Ehrenhaus*, 216 N.C. App. at 73–75, 717 S.E.2d at 19–20 (citing *Armstrong v. Bd. of Sch. Dir. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)).

{35}   The Court has applied the foregoing factors to the present case and concludes that the consideration for the Settlement was fair, reasonable, and adequate. *Ehrenhaus*, 216 N.C. App. at 73, 717 S.E.2d at 20.

{36}   Based on its review of the record, the Court concludes that the Settlement resulted from arm's-length negotiations that were undertaken without collusion.   Plaintiffs credibly assert that Plaintiffs' counsel determined that a settlement that achieved supplemental disclosures without further monetary relief was in the best interests of the putative class because the disclosures were material to the upcoming shareholder vote, Plaintiffs' other claims carried significant risk of an adverse result, and PokerTek would only agree to make the additional disclosures as part of a comprehensive settlement of all claims.

{37}   Moreover, the class members overwhelmingly approved the merger, and no class member raised an objection to the Settlement after receiving notice. *Ehrenhaus*, 216 N.C. App. at 74, 717 S.E.2d at 20 ("[T]he reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." (alteration in original) (quoting *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989)).

{38}   In addition, there is nothing in the record to suggest that Plaintiffs' claims are strong enough to justify further litigation. Plaintiffs' claims for breach of

fiduciary duty carried significant risk, risk acknowledged by Plaintiffs' lead counsel at the Settlement Hearing.

{39}   In particular, should Plaintiffs' claims have been deemed to be derivative, *see, e.g.*, *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 659, 488 S.E.2d 215, 220 (1997) (holding that "[t]o support the right to an individual lawsuit, the duty must be one that the alleged wrongdoer owed directly to the shareholder as an individual"), Plaintiffs' claims faced a significant standing hurdle in light of Plaintiffs' failure to make statutory demand on PokerTek.  *See* N.C. Gen. Stat. § 55-7-42(1) (2013) (providing written demand is a condition precedent to a derivative action).

{40}   Moreover, Plaintiffs faced considerable uncertainty as to whether their challenges to director action could overcome the evidentiary presumption afforded by the business judgment rule.  *Hammonds v. Lumbee River Elec. Membership Corp.,* 178 N.C. App. 1, 20–21, 631 S.E.2d 1, 13–14 (2006).

{41}   Similarly, Plaintiffs' aiding and abetting claims against the corporate Defendants faced substantial risk, both because it is unclear whether North Carolina recognizes this cause of action, *see In re Harris Teeter Merger Litig.*, 2014 NCBC 44 at ¶ 41,  and because the success of those claims is entirely dependent upon establishing the underlying breach of fiduciary duty.  *See Tong v. Dunn,* 2012 NCBC 16  ¶¶  11–13  (N.C.  Super.  Ct.  Mar.  9,  2012), www.ncbusinesscourt.net/opinions/2012_NCBC_16.pdf (granting motion to dismiss), *overruled on other grounds*, 752 S.E.2d 669 (N.C. Ct. App. 2013).

{42}   Under these circumstances, the Court finds Plaintiffs' counsel's decision to settle the case for supplemental disclosures without further monetary recovery prudent and reasonable.  In particular, the Court concludes that Plaintiffs' counsel reasonably assessed the strength of Plaintiffs' claims in considering whether the bargained-for supplemental disclosures were adequate consideration for the Settlement.

{43}   As Judge Gale recently explained, the Court of Appeals has "adopted the Delaware Supreme Court's articulation of 'materiality,' used while evaluating director disclosures, to the effect that a disclosed fact is material if there is a

'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" *In re Harris Teeter Merger Litig.*, 2014 NCBC 44 at ¶ 45 (quoting *Ehrenhaus*, 216 N.C. App. at 88, 717 S.Ed.2d at 28–29 (in turn quoting *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985)).

{44}   Plaintiffs have presented reasoned arguments that the supplemental disclosures PokerTek agreed to make potentially met this standard.  In particular, PokerTek made supplemental disclosures of the sort of information that the Delaware Chancery Court has recognized may be material, including disclosures concerning (i) information Plaintiffs contended was necessary for discounted cash flow analyses (*see, e.g.*, *In re Netsmart Techs. Inc. S'holders Litig.*, 924 A.2d 171, 177 (Del. Ch. 2007) (enjoining merger where proxy failed to disclose projections used in discounted cash flow analysis, which are "highly-prized . . . by investors"); *In re BioClinica, Inc. S'holders Litig.*, 2013 Del. Ch. LEXIS 52, *18–*21 (Del. Ch., Feb. 25, 2013) (finding that the fact that management did not disclose certain financial projections was itself material); *In re Toys "R" Us, Inc., S'holder Litig.*, 877 A.2d 975, 1013 (Del. Ch. 2005) (preferring DCF model)); (ii) comparative financial information, including enterprise value/EBITDA and enterprise/revenue multiples, for companies selected as comparable by Burrill in preparing its fairness opinion (*see, e.g.*, *Turberg v. Arcsight*, C.A. No. 5821-VCL, at 43 (Del. Ch., Sept. 20, 2011) (transcript) (finding comparator companies' multiples material)); and (iii) information regarding PokerTek's engagement of a financial advisor and of the business relationship between PokerTek, Multimedia and Burrill (*see, e.g.*, *David F. Simonetti Rollover IRA v. Margolis*, 2008 Del. Ch. LEXIS 78, *25 (Del. Ch., June 27, 2008) (finding "imperative" that "stockholders be able to understand what factors might influence the financial advisor's analytical efforts")).

{45}   Furthermore, Judge Gale recently found Plaintiffs' lead counsel to be "well equipped" to undertake the settlement analysis, "as they are substantially experienced in comparable litigation in both North Carolina and before the Delaware Chancery Court," *In re Harris Teeter Merger Litig.*, 2014 NCBC 44 at ¶ 36, and

observed that "'the opinion of experienced and informed counsel is entitled to considerable weight . . . in assessing whether a settlement is fair, adequate and reasonable' where counsel has undertaken a 'detailed assessment[] of the strength and weaknesses of the claims asserted, the applicable damages, and the likelihood of recovery.'" *Id.* (quoting *Ehrenhaus*, 216 N.C. App. at 93, 717 S.E.2d at 31 (alteration in original) (additional quotation omitted). This Court agrees.

{46} In sum, the Court concludes that the Settlement reflects a reasoned compromise and that the supplemental disclosures unaccompanied by additional monetary relief were fair, reasonable, and adequate consideration for the Settlement. The Settlement was in the best interests of the Settlement Class.

## IV. THE REQUEST FOR ATTORNEYS' FEES

{47} Plaintiffs request the Court to approve the provision in the Stipulation by which PokerTek agreed to pay up to $140,000 ("Settlement Payment") in attorneys' fees to Plaintiffs' counsel and to reimburse Plaintiffs' counsel for their costs.

{48} The Settlement is not conditioned on Court approval of the Settlement Payment and becomes final upon approval by the Court, whether or not the Settlement Payment is approved or made.[4]

---

[4] Paragraph 6 (Attorneys' Fees and Expenses) of the Stipulation provides, in relevant part, as follows:

> Defendants acknowledge that the Supplemental Disclosures were caused by Plaintiffs' initiation and prosecution of their claims as set forth in the Consolidated Action and that such Supplemental Disclosures constitute valid consideration to the Company and its shareholders. Plaintiffs' Counsel will petition the Court for approval of a payment of fees and expenses in connection with the Action ("Fee Application") and Defendants have agreed to take no position on Plaintiff's Counsel's petition for approval of attorneys' fees from the Court except as described below. After the parties agreed to the other substantive terms of the Settlement contained herein, Defendants and Plaintiffs negotiated in good faith the amount of the Fee Application. Subject to Court approval, Defendants will not object to a Fee Application seeking $140,000 in total fees and expenses. The Fee Application shall be Plaintiffs' Counsel's sole application for an award of fees and expenses in connection with any litigation concerning the Proposed Transaction. The Defendants shall not be responsible for, and the Plaintiffs and Plaintiffs' Counsel waive any right to collect, any award of fees and expenses in excess of $140,000. Any failure by the Court to approve the amount of fees and expenses sought by the Plaintiffs or Plaintiffs' Counsel shall not affect the validity or finality of the Settlement. PokerTek, its successor and/or assigns, and/or their insurer(s), and/or the insurer(s) of the Individual Defendants, shall pay the fees and expenses not in excess of $140,000 to Plaintiffs' counsel in the Actions, on behalf of all

{49} Judge Gale discussed at length in *In re Harris Teeter Merger Litigation,* the Court's two related but separate tasks in assessing Plaintiffs' request: (1) determining whether the Court has the authority to grant the request; and (2) if so, whether the requested Settlement Payment is reasonable. *See generally In re Harris Teeter Merger Litig.*, 2014 NCBC 44, at ¶¶ 52–69.

{50} First, as to the Court's authority, this Court elects to adopt and follow Judge Gale's analysis in *In re Harris Teeter Merger Litigation*. Therefore, like Judge Gale and for the same reasons, this Court assumes its authority to authorize a private agreement for payment of fees to class counsel as settlement consideration subject to Court approval. *See generally Id.* at ¶¶ 53–57.

{51} The Court thus now turns to a review of the reasonableness of the amount requested utilizing the method suggested by *Ehrenhaus* and implemented recently in both *In re Harris Teeter Merger Litigation* and *In re Progress Energy Shareholder Litigation.*

{52} In North Carolina, the reasonableness of attorneys' fees is governed by Rule 1.5 of the Revised Rules of Professional Conduct of the North Carolina State Bar ("RPC"). *Ehrenhaus*, 216 N.C. App. at 96, 717 S.E.2d at 33. RPC 1.5 provides that "[a] lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee or collect a clearly excessive amount for expenses." *Id.*

{53} Rule 1.5 includes the following factors:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

Defendants, within 10 business days after the entry of an order by the Court approving such fees and expenses. The parties agree that no other Defendant shall be required to make any such payment. . . . Any failure by the Court to approve the amount of such fees shall not affect the validity of the terms of the Settlement . . . .

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

*Id.* at 96–97, 717 S.E.2d at 33–34.

{54}    Considering these factors, the Court concludes that the provisions for attorneys' fees and costs in the Stipulation are fair and reasonable, and the fee sought here is not excessive.

{55}    The evidence of record shows that Plaintiffs' counsel devoted 497.65 hours to the prosecution of Plaintiffs' claims, not including time associated with the Settlement Hearing, and that the time expended was reasonable in light of the complex nature of this litigation. *See* RPC 1.5(1).

{56}    Further, the nature of the claims required highly skilled litigation counsel that was experienced in shareholder class actions, and the Court finds that Plaintiffs' counsel are highly-regarded, highly-experienced class action counsel that have been involved in a number of significant class action matters over many years in jurisdictions all across the United States. *See* RPC 1.5(1) and (7).

{57}    The Court further concludes that Plaintiffs' counsel's time was efficiently and necessarily spent. Plaintiffs' counsel in the various actions worked promptly to reach agreement on the selection of lead and liaison counsel early in the case, thereby avoiding unnecessary duplication of effort. Plaintiffs' counsel retained an expert, reviewed and analyzed approximately 3,100 documents, prepared a motion for preliminary injunction with supporting briefs, and undertook confirmatory discovery after entering the MOU. *See* RPC 1.5(1).

{58}    In support of their request for fees, Plaintiffs offer the affidavit of John Hughes, a North Carolina attorney and Court-approved liaison counsel in this Consolidated Action, indicating that North Carolina attorneys in complex commercial litigation cases typically charge fees in the range of $250–$450 per hour. Such fees are consistent with the Court's own experience.

{59}    Several of Plaintiffs' counsel, including Court-approved lead counsel, practice outside of North Carolina, including in New York City and Washington, D.C. Attorneys' fees for similar work in these cities is substantially higher than the typical range in North Carolina, as evidenced by Plaintiffs' counsel's lodestar calculation of $275,332, which represents an average attorney rate of $553.26 per hour.

{60}    The Court, however, consistent with *GE Betz, Inc. v. Conrad*, 752 S.E.2d 634, 656–57 (N.C. Ct. App. 2013), examines the fees requested here under North Carolina standards and notes that the requested Settlement Payment of $140,000 yields net attorneys' fees of $112,883.93, which represents an average attorney rate of $226.83 per hour.   Not only is this requested rate a substantial discount from Plaintiffs' counsel's regular hourly rates, but it is lower than the rates North Carolina attorneys involved in complex commercial and securities litigation typically charge for their legal services.   Accordingly, the Court concludes that Plaintiffs' counsel's requested rate is reasonable and clearly not excessive, and further, that the Settlement Payment is reasonable in light of the amount customarily charged in North Carolina for similar services. *See* RPC 1.5(3).

{61}    The Court further finds that the requested fees reflect an appropriate recognition of the value of the dispute and the results obtained.  *See* RPC 1.5(4).

{62}    In addition, the Court finds that Plaintiffs' counsel undertook the representation with no assurance of payment, *see* RPC 1.5(8), advanced the expenses of the litigation, *id.*, and worked diligently under a compressed time schedule, *see* RPC 1.5(2) and (5), all of which militate in favor of approval of the Settlement Payment.

{63}    The Court also notes that although the merger transaction that is the subject of this litigation is substantially smaller than several of the recent mergers that have been the subject of disclosure-based, class action settlements in the Business Court, the requested fees are significantly less than the fees awarded in those cases, supporting approval of the request here. *See, e.g.*, *Ehrenhaus*, Order, No. 08 CVS 22632 (N.C. Super. Ct. Feb. 5, 2010) ($1,056,067.57); *In re Progress*

*Energy S'holder Litig.*, 2011 NCBC 45 ($550,000); *In re PPDI Litigation*, 2012 NCBC 33 ($450,000); *In re Harris Teeter Merger Litig.*, 2014 NCBC 44 ($325,000).

{64}   The Court has reviewed Vice Chancellor Laster's chart of fees that have been approved in Delaware litigation and finds that the requested Settlement Payment is well within the parameters of an expected award in Delaware. *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1141–43, apps. A–C (Del. Ch. 2011).

{65}   Each of Plaintiffs' counsel has a written client fee agreement that includes an understanding of, and agreement to, the sharing of fees among Plaintiffs' counsel.

## V.   JUDGMENT

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

{66}   The Consolidated Action is a proper class action pursuant to Rule 23 of the North Carolina Rules of Civil Procedure.

{67}   Solely for the purposes of effectuating the settlement, the Court certifies the Settlement Class consisting of

> Any and all record and beneficial holders or owners of PokerTek common stock and their respective successors, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate or remote, and any person or entity acting for or on behalf of, or claiming under any of them, together with their predecessors and successors and assigns, who beneficially owned PokerTek common stock as of April 29, 2014 or between that date and the date of consummation of the Proposed Transaction, but excluding: (i) the Defendants; (ii) the immediate families of the PokerTek Board; (iii) any parent, subsidiary, affiliate, officer, or director of PokerTek; (iv) any entity in which any excluded person has a controlling interest; and (v) the legal representatives, heirs, successors and assigns of any excluded person.

{68}   For the purposes of settlement only, the Court finds that the prerequisites for a class action under Rule 23 have been satisfied in that: (i) Plaintiffs and Plaintiffs' counsel fairly and adequately represent the interests of the class; (ii) there is no conflict of interest between Plaintiffs and the members of the class; (iii)

Plaintiffs have a genuine personal interest in the outcome of the case; (iv) Plaintiffs within this jurisdiction adequately represent members of the class outside this State; and (v) Plaintiffs are so numerous that it is impractical to bring them before the Court.

{69} The Settlement of this Consolidated Action as provided in the Stipulation is approved as fair, reasonable, and adequate, and in the best interest of Plaintiffs, the members of the class and PokerTek.

{70} All class members are bound by this Order and Final Judgment ("Judgment").

{71} The parties to the Stipulation are hereby authorized and directed to consummate the Settlement in accordance with the terms and provisions thereof, and the Clerk is directed to enter and docket this Judgment.

{72} This Consolidated Action and the Released Claims, as defined by the Stipulation, are hereby dismissed on the merits and with prejudice in full and final discharge of any and all claims or obligations that were or could have been asserted in the Consolidated Action against Defendants.

{73} Plaintiffs and all members of the class, and their respective heirs, executors, administrators, estates, predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns, agree to release and forever discharge, and by operation of this Judgment hereby release and forever discharge, all Released Claims as against all Released Persons, as defined by the Stipulation. The Released Persons shall be deemed to be released and forever discharged from all of the Released Claims.

{74} Plaintiffs and all class members, and their respective heirs, executors, administrators, estates, predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns, are forever barred and enjoined from commencing, instituting, or prosecuting, either directly or in any other capacity, any Released Claims against any of the Released Persons in any forum whatsoever.

{75} Defendants, their counsel, and the Released Persons shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever

released, relinquished, and discharged each and all of the Releasing Persons, Plaintiffs and Plaintiffs' counsel from all claims, complaints, allegations, liabilities or sanctions (including unknown claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement, or resolution of the Consolidated Action or the Released Claims; provided, however, that this shall not include any claims to enforce the Stipulation.

{76} Neither the MOU, the Stipulation or this Judgment, nor any of the terms and provisions of the MOU, the Stipulation or this Judgment, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements referred to herein, nor the Settlement, nor the fact of the Settlement, nor the settlement proceedings, nor any statements in connection therewith, shall (1) be deemed an admission by any Defendant of any fault, liability or wrongdoing as to any facts or claims alleged or asserted in the Consolidated Action, or any other actions or proceedings, or that any of the Supplemental Disclosures are material; (2) be deemed an admission by any Plaintiff concerning the merits, or lack thereof, of any facts or claims alleged or asserted in the Consolidated Action, or any other actions or proceedings, or that any of the Supplemental Disclosures are not material; or (3) otherwise be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person in the Consolidated Action, or in any other action or proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of the Settlement or to effectuate the liability protections agreed to herein, including without limitation to enforce a defense or counterclaim based on principles of release, accord, and satisfaction, good-faith settlement, res judicata, collateral estoppel, judgment bar or reduction, claim or issue preclusion, or any similar liability-limiting defense.

{77} If the Effective Date, as defined by the Stipulation, does not occur, if the Stipulation is disapproved, canceled, or terminated pursuant to its terms, or if the Defendants withdraw from the Settlement pursuant to paragraph 8(a) of the Stipulation, all of the parties to the Stipulation shall be deemed to have reverted to their respective litigation status immediately prior to the execution of the MOU, and

each Party shall be entitled to proceed as if the MOU and the Stipulation had not been executed (except for paragraphs 2(b), 8(a), 8(b), 9(d)–(g), 9(i)–(m), 9(s), and 9(t) of the Stipulation, which shall survive the occurrence of any such event) and the related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in the Consolidated Action shall be preserved without prejudice in any way whatsoever.

{78}    The binding effect of this Judgment and the obligations of Plaintiffs and Defendants under the Settlement shall not be conditioned upon or subject to the resolution of any appeal from this Judgment that relates solely to the issue of Plaintiffs' Counsel's (or any other counsel's) application for an award of attorneys' fees and expenses.

{79}    All members of the class shall be and are deemed bound by the Stipulation and this Judgment. This Judgment, including the release of all Released Claims against all Released Persons, shall have res judicata and other preclusive effect in all pending and future lawsuits, arbitrations, or other proceedings maintained by or on behalf of any of the Plaintiffs and all other class members as well as their respective heirs, executors, administrators, estates, predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns, and anyone claiming through or on behalf of any of them.

{80}    Without further order of this Court, the parties may agree in writing to reasonable extensions of time to carry out any of the provisions of the Stipulation.

{81}    Without affecting the finality of this Judgment in any way, this Court reserves jurisdiction over all matters relating to the administration and consummation of the Settlement.

{82}    Defendants shall deliver to Plaintiffs' counsel the Settlement Payment of $140,000 within ten (10) business days after the date of this Order. Such payment shall be subject to the joint and several obligation of Plaintiffs' counsel to refund, within ten (10) business days, any overage received and any interest accrued or accumulated thereon if, as a result of any appeal or successful collateral proceeding, the fee or expense award is reduced or reversed or if the award order does

not become final, the Settlement itself is voided by any Party as provided herein or in the Stipulation, or the Settlement is later reversed by any court. By making the payment called for in this paragraph, Defendants fully and finally extinguish their liability for any and all attorneys' fees, expenses, or other costs in connection with the Consolidated Action, the class members, and any counsel for members of the Settlement Class. Defendants shall bear no responsibility or liability whatsoever for the allocation of any award of fees and expenses.

SO ORDERED, this the 22nd day of January 2015.